RECEIVED
CLERK'S OFFICE
2015 FEB 12 AM 8:31
U.S. DISTRICT COURT
MIDDLE DIST. OF GEORGIA
MACON, GEORGIA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
__Macon__ DIVISION

QUESTIONNAIRE FOR THE PRISONERS PROCEEDING
PRO SE UNDER 42 U.S.C. § 1983

__Timothy Denver Gumm__
__GDC# 814227__

(GIVE FULL NAME AND PRISON NUMBER OF PLAINTIFF)

**Plaintiff**

vs.

__Rick Jacobs__
__Bruce Chapman__
__Rodney McCloud__
__William Powell__

(NAME OF EACH DEFENDANT)

**Defendant(s)**

CIVIL ACTION NO:

~~5:15-CV-0~~41

I. GENERAL INFORMATION

1. Your full name and prison number __Timothy Denver Gumm GDC# 814227__
2. Name and location of prison where you are now confined __Georgia Diagnostic & Classification Prison, Jackson, Georgia__
3. Sentence you are now serving (how long?) __Seven years to life__
   (a) What were you convicted of? __Kidnapping and Rape__

   (b) Name and location of court which imposed sentence __Colquitt County Superior Court, Moultrie, Georgia__
   (c) When was sentence imposed? __December 1994__
   (d) Did you appeal your sentence and/or conviction?   Yes ☑   No ☐
   (e) What was the result of your appeal? __Conviction upheld__

(f) Approximate date your sentence will be completed __undetermined__

## II. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

4. Other than an appeal of your conviction or sentence, and other than any habeas action, have you filed a lawsuit dealing with the same or similar facts or issues that are involved in this action? Yes ☐ No ☑

5. If your answer to question 4 is "Yes," list that lawsuit below, giving the following information:
(IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH)

  (a) Parties to the previous lawsuit INVOLVING SAME FACTS:
      Plaintiff(s): __N/A__

      Defendant(s): __N/A__

  (b) Name of Court: __N/A__
  (c) Docket Number: __N/A__   When did you file this lawsuit? __N/A__
  (d) Name of judge assigned to case: __N/A__
  (e) Is this case still pending?   Yes ☐   No ☐
  (f) If your answer to (e) is "No", when was it disposed of and what were the results?
      (DID YOU WIN? WAS THE CASE DISMISSED? DID YOU APPEAL?)
      __N/A__

6. Other than an appeal of your conviction or sentence, and other than any habeas action, have you ever filed any lawsuit while incarcerated or detained?   Yes ☑ No ☐

7. If your answer to question 6 is "Yes," list that lawsuit below, giving the following information:
(IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH)

  (a) Parties to the previous lawsuit:
      Plaintiff(s): __Timothy Denver Gumm__
      Defendant(s): __Warden, Smith State Prison (name unknown)__
  (b) Name of Court: __U.S. District Court, Southern District of Georgia__
  (c) Docket Number: __unknown__   When did you file this lawsuit? __1996__
  (d) Name of judge assigned to case: __unknown__
  (e) Is this case still pending?   Yes ☐   No ☑

(f)     If your answer to (e) is "No", when was it disposed of and what were the results?
(DID YOU WIN? WAS THE CASE DISMISSED? DID YOU APPEAL?)
Dismissed WITHOUT prejudice, citing exhaustion of state remedies. Possibly appealed

8. AS TO <u>ANY</u> LAWSUIT FILED IN <u>ANY</u> FEDERAL COURT in which you were permitted to proceed *in forma pauperis*, was any suit dismissed on the ground that it was frivolous, malicious, or failed to state a claim?     Yes ☐     No ☑

If your answer is Yes, state the name of the court and docket number as to each case:
N/A                                    N/A

### III. PLACE OF INCIDENT COMPLAINED ABOUT

9. Where did the matters you complain about in this lawsuit take place? Georgia Diagnostic and Classification Prison

(a) Does this institution have a grievance procedure?     Yes ☑     No ☐

(b) If your answer to question 9(a) is "Yes", answer the following:

(1) Did you present your complaint(s) herein to the institution as a grievance?
Yes ☑     No ☐

(2) If Yes, what was the result? At the institutional level, the warden denied the complaint as a non-grievable issue.

(3) If No, explain why not: N/A

(c) What, if anything else, did you do or attempt to do to bring your complaint(s) to the attention of prison officials? Give dates and places and the names of persons talked to.

Carl Humphrey, former Warden (letter, 8-15-11); Shevondah Fields, Manager, Inmate Affairs (letter, 8-15-11); William Powell, Deputy Warden (letter, 8-15-11); and Bruce Chapman, Warden (second institutional grievance, 1-8-15).

(d) Did you appeal any denial of your grievance to the highest level possible in the prison system?    Yes ☑    No ☐

(1) If Yes, to whom did you appeal and what was the result? On executive appeal, Inmate Affairs upheld the Warden's denial of the grievance.

(2) If No, explain why you did not appeal: N/A

10. In what other institutions have been confined? Give dates of entry and exit.

| | | | |
|---|---|---|---|
| Coastal State Prison | 1995-1995 | Hays State Prison | 2006-2007 |
| Smith State Prison | 1995-1997 | Telfair State Prison | 2007-2010 |
| Telfair State Prison | 1997-1999 | | |
| Macon State Prison | 1999-1999 | | |
| Georgia State Prison | 1999-2006 | | |

## IV. PARTIES TO THIS LAWSUIT

11. List your CURRENT place of incarceration/mailing address.

Georgia Diagnostic and Classification Prison
P.O. Box 3877
Jackson, Georgia 30233

12. List the full name, the official position, and the place of employment of each defendant in this lawsuit. (ATTACH ADDITIONAL PAGES IF NECESSARY)

| | | | |
|---|---|---|---|
| Rick Jacobs, Field Operations Manager Ga. Dept. of Corrections 300 Patrol Road Forsyth, GA 31029 | Bruce Chapman, Warden Ga. Diagnostic and Classification Prison P.O. Box 3877 Jackson, GA 30233 | Rodney McCloud, Superintendent Ga. Diag. & Class. Prison P.O. Box 3877 Jackson, GA 30233 | William Powell, Deputy Warden Security Ga. Diag. & Class. Prison P.O. Box 3877 Jackson, GA 30233 |

## V. STATEMENT OF CLAIM

13. In the space hereafter provided, and on separate sheets of paper if necessary, set forth your claims and contentions against the defendant(s) you have named herein. Tell the court <u>WHAT</u> you contend happened to you, <u>WHEN</u> the incident(s) you complain about occurred, <u>WHERE</u> the incident(s) took place, <u>HOW</u> your constitutional rights were violated, and <u>WHO</u> violated them? Describe how <u>each</u> defendant was involved, including the names of other persons who were also involved. If you have more than one claim, number and set forth each claim SEPARATELY.

DO NOT GIVE ANY LEGAL ARGUMENT OR CIT ANY CASES OR STATUTES AT THIS TIME; if such is needed at a later time, the court will advise you of this and will afford you sufficient time to make such arguments. KEEP IN MIND THAT RULES 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE <u>REQUIRES</u> THAT PLEADINGS BE <u>SIMPLE</u>, <u>CONCISE</u>, and <u>DIRECT</u>! If the court needs additional information from you, you will be notified.

WHERE did the incident you are complaining about occur? That is, at what institution or institutions? **Georgia Diagnostic and Classification Prison**

WHEN do you allege this incident took place? **From March 1, 2010 to date**

WHAT happened?

**Summary.**

On January 26, 2010, three inmates attempted an escape at Telfair State Prison in Helena, Georgia by cutting through the interior perimeter fence during the evening meal at approximately 7:00 P.M. When the escape failed, the three inmates returned to their assigned dormitories (or cellblocks). After completing a total lockdown of the entire prison, prison officials conducted cell to cell searches in effort to identify the inmates involved in the incident. At approximately 9:00 P.M., Plaintiff Timothy Denver Gumm and two other inmates were taken into custody for the escape attempt based on identification by a confidential informant.

(See Attachments 1-10).

14. List the name and address of every person you believe was a WITNESS to the incident(s) you complain about, BRIEFLY stating what you believe each person knows from having seen or heard what happened. (USE ADDITIONAL SHEETS, IF NECESSARY)

June Bishop, Deputy Warden of Security
Georgia Diagnostic and Classification Prison
P.O. Box 3877                    (participates in executive level reviews
Jackson, GA 30233                 of all inmate classification statuses.)
                        , (see attachment 11)

15. BRIEFLY state exactly what you want the court to do for you. That is, what kind of relief are you seeking in this lawsuit? Do not make any legal arguments and do not cite any cases or statutes! (USE ADDITIONAL SHEETS, IF NECESSARY)

Injunctive relief for immediate reassignment from the SMU: Tier III Program at Georgia Diagnostic and Classification Prison to include protection from assignment to its equivalent at other institutions the Level 5 Tier II Program; declaratory relief; damages in the amount of two hundred thousand dollars ($200,000) for five years of physical, mental and emotional anguish, irreversible harm, and deprivation of procedural due process; and court costs.

16. You may attach additional pages if you wish to make any legal argument. However, legal arguments are NOT required in order for you to obtain relief under §1983. If the court desires legal argument from you, it will request it. If any defendant presents a legal argument, you will be afforded an opportunity to respond thereto.

17. KEEP IN MIND THAT ONCE YOUR LAWSUIT IS FILED, THE COURT WILL REQUIRE YOU TO DILIGENTLY PROSECUTE IT. That means that you will be required to go forward with your case without delay. Thus, if you fail to adequately prepare your case before you file it, you may find your lawsuit dismissed for failure to prosecute if you take no action once it is filed. YOU WILL RECEIVE NO FURTHER INSTRUCTIONS FROM THE COURT TELLING YOU WHAT TO DO OR HOW TO DO IT! IT IS YOUR RESPONSIBILITY AND YOURS ALONE TO PROSECUTE YOUR OWN CASE! If you fail to prosecute your case, it will be dismissed under Rule 41 of the Federal Rules of Civil Procedure.

Signed this 9th day of February, 20 15.

Timothy Denver Gumm
PLAINTIFF

## V. Statement Of Claim
(continued)

Ten days later, after receiving a letter from a second confidential informant, prison officials charged Gumm and the other two inmates institutionally with Attempted Escape and Destruction of State Property. On the following day, January 27, 2010, prison officials transferred Gumm alone to Georgia Diagnostic and Classification Prison for assignment to the Special Management Unit where the institutional disciplinary court eventually took place despite the investigating officer's recommendation to dismiss the charges. At the hearing, the court found Gumm guilty on both charges, but on administrative appeal, the Warden subsequently expunged both charges from Gumm's institutional record. See, Disciplinary Report / Appeal No. 96442 / Expunged March 1, 2010.

No inmates or prison staff sustained harm or injury during the escape attempt and prison officials neglected to file outside criminal charges. Prison officials immediately reassigned the other two inmates involved in the incident back to the general prison population, but remanded Gumm to the Special Management Unit for disciplinary punishment / segregation where he has remained for the past five (5) years (and counting), in violation of Georgia Department of Corrections (GDC) Standard Operating Procedure (SOP) and the United States Constitution.

Attachment
1

# Enumeration of Claims

## Claim 1

Defendants knowingly and arbitrarily imposed five (5) years (to date) of disciplinary punishment/segregation upon Gumm through assignment to the Special Management Unit for the expunged disciplinary charge of Attempted Escape, in contradiction to the final outcome of the institutional disciplinary proceedings which amounts to an <u>original</u> deprivation of procedural due process under the Due Process Clause of the Fourteenth Amendment.

## Claim 2

Defendants knowingly and arbitrarily imposed five (5) years (to date) of disciplinary punishment/segregation upon Gumm through assignment to the Special Management Unit for the expunged disciplinary charge of Attempted Escape, in contradiction to state prison regulation GDC SOP II B02-0001 which creates a protected liberty interest under the Due Process Clause of the Fourteenth Amendment.

## Claim 3

Defendants knowingly and arbitrarily failed to remove all references to the expunged disciplinary charge of Attempted Escape from Gumm's institutional record as decreed on administrative appeal <u>and</u> commute his punitive segregation to nonpunitive segregation, in contradiction to state prison regulation GDC SOP II B02-0001 (I)(H) which creates a protected liberty

Attachment 2

interest under the Due Process Clause of the Fourteenth Amendment.

## Claim 4

Defendants knowingly and arbitrarily imposed disciplinary punishment / segregation upon Gumm through assignment to the Special Management Unit for which he never met the criteria, even <u>with</u> the expunged disciplinary charge of Attempted Escape, in contradiction to state prison regulation GDC SOP II B09-0004 (V)(I)(B)(3) which creates a protected liberty interest under the Due Process Clause of the Fourteenth Amendment.

## Claim 5

Defendants knowingly and arbitrarily held Gumm in disciplinary punishment / segregation, notwithstanding the constitutionality or unconstitutionality of the initial imposition, four (4) years (to date) longer than the one (1) year assignment period prescribed for other inmates in identical confinement, in contradiction to state prison regulation GDC SOP II B09-0004 (V)(I)(A)(2) which creates a protected liberty interest under the Due Process Clause of the Fourteenth Amendment.

## Claim 6

Defendants knowingly and arbitrarily held Gumm in disciplinary punishment / segregation approximately three (3) years and six (6) months, after expungement of the disciplinary charge of Attempted Escape, without any kind of formal and recorded reclassification status notice, hearing, periodic review, or administrative and executive level appeal, in contradiction to state

prison regulation GDC SOP II B09-0001 which creates a protected liberty interest <u>and</u> amounts to a deprivation of procedural due process under the Due Process Clause of the Fourteenth Amendment.

## Claim 7

Defendants knowingly and arbitrarily ignored eight (8) consecutive 90-day classification status reviews (to date) that recommended Gumm's transfer from the disciplinary punishment/segregation in question which amounts to an <u>original</u> deprivation of procedural due process under the Due Process Clause of the Fourteenth Amendment.

## Brief in Support

Created in or around 2006, the Special Management Unit (SMU) at Georgia Diagnostic and Classification Prison consists of six (6) thirty-two (32) single-person-cell dormitories reserved for the long-term solitary confinement of inmates who commit only the most serious institutional disciplinary offenses throughout the state prison system such as murder, rape, major assault, escape, and attempted escape. Until 2013, the SMU operated without an official GDC SOP policy as an intensive "stepdown" program for these inmates to earn their way back to the general prison population through compliance and positive behavior. On August 1, 2013, prison officials implemented an official GDC SOP policy for the SMU Stepdown Program and renamed it Special Management Unit: Tier III Program. Though different in name, the basic design, purpose and conditions remained the same.

Attachment
4

One notable difference: Under the newly-implemented GDC SOP policy, prison officials established for the first time a Classification Committee to afford inmates some form of procedural due process and divided the SMU into four (4) progressive 90-day program phases with increasingly less restriction on all privileges, entitlements and conveniences. Ideally, inmates who successfully complete all four 90-day phases return to the general prison population in one (1) year. See, GDC SMU: Tier III Program Inmate Handbook and Inmate Privilege List and SMU: Tier III Program at GDC SOP II B09-0004. (Henceforth, Plaintiff will reference both the pre-policy SMU and the post-policy SMU as the SMU: Tier III Program.)

Inmates assigned to the SMU: Tier III Program are subjected to atypical and significant hardships that greatly exceed the ordinary incidents of everyday prison life for inmates in the general prison population and administrative segregation and protective custody.

Initially, inmates are stripped of standard prison-issued uniforms and boots and all personal property for a minimum of six (6) months (three (3) months for personal property) and provided jumpsuits and shower shoes (flip flops). Inmates are confined to cells with completely obscured front and rear windows for twenty-four (24) hours a day except for two and one half (2½) hours of outside (cage) recreation only two (2) days per week (or less to none depending on program phase and weather conditions). Inmates are afforded fifteen (15) minute showers for personal hygiene only three (3) days per week. Inmates are forced to submit to humiliating strip searches prior to exiting the cell for any reason and remain handcuffed and shackled with two guard

Attachment
5

escorts at all times during all movement even during confidential medical consultations and examinations. And regardless of GDC SOP policy, inmates are provided substandard food and medical care and no rehabilitative classes or educational opportunities, including Senate-mandated rehabilitative classes for parole eligibility like Substance Abuse and Family Violence. (Note: GED Prep and correspondence courses are listed on the Inmate Privilege List for some program phases, but never took effect.)

Upon assignment to the SMU: Tier III Program, inmates automatically receive additional punitive restrictions from the Authorized Disciplinary Sanctions List (traditionally imposed only through the institutional disciplinary court for valid disciplinary convictions) on all basic privileges, entitlements and conveniences, including but not limited to telephone restriction, visitation restriction, food and property package restriction, commissary restriction, and general and law library restriction. See, Authorized Disciplinary Sanctions List at GDC SOP II B02-0001 A 05.

To elaborate, inmates receive only four (4) fifteen (15) minute telephone calls per month (or less to <u>none</u> depending on program phase). Inmates receive only four (4) two (2) hour no contact visitations per month through a glass window (or less to <u>none</u> depending on program phase). Inmates receive strictly limited commissary (varying in degree from program phase to program phase) and no food or property packages. Inmates receive no general library services or physical or electronic access to the law library and a maximum of only two (2) statutes or case laws per week for legal research. And inmates receive week to week (or longer) medical consultations

for sickness and common ailments. See, Inmate Privilege List. Compare, Authorized Disciplinary Sanctions List.

In comparison, inmates in the general prison population enjoy out-of-cell movement from 5:00 A.M. to 11:30 P.M. (18½ hours) on weekdays and 5:00 A.M. to 1:00 A.M. (20 hours) on weekends and holidays. Inmates receive virtually unlimited access to showers and the prison recreation yard and gymnasium and sports activities. Inmates receive virtually unlimited access to the telephone and six (6) hour contact visitations every Saturday, Sunday and holidays. Inmates receive regular physical access to both the general and law library and rehabilitative classes and educational opportunities. Inmates receive monthly property packages and seasonal food packages. Inmates receive better quality and larger quantities of food and day-to-day <u>private</u> medical consultations.

And with the exception to restricted movement, inmates in administrative segregation and protective custody retain all privileges, entitlements and conveniences afforded to inmates in the general prison population. Inmates have cellmates. Inmates receive all standard prison-issued uniforms and boots and all personal property. Inmates receive <u>five</u> (5) days of outside recreation per week as opposed to only two days. Inmates receive daily access to the telephone and full six (6) hour <u>contact</u> visitations every Saturday, Sunday and holidays. Inmates receive unrestricted commissary and monthly property packages and seasonal food packages. Inmates receive rehabilitative classes and educational opportunities, general library services, and at most institutions, electronic law library services. Inmates receive the same quality and quantity of food as inmates in the

Attachment
7

general prison population and day-to-day medical consultations. And inmates receive classification status reviews every thirty (30) days as opposed to every 90 days. See, Administrative Segregation at GDC SOP II B09-0001. Compare, Disciplinary Isolation at GDC SOP II B02-0004.

On Gumm's SMU: Tier III Program Assignment Request Form and Assignment Memo and all other related documents (e.g., 90-Day Classification Review Forms, weekly door charts, et cetera), prison officials list "Attempted Escape" from Telfair State Prison as the sole reason for his assignment to the SMU: Tier III Program. Since his assignment to the SMU: Tier III Program, Gumm has been a model prisoner with no disciplinary infractions or program phase demotions for negative behavior. Absent the expunged disciplinary charge of Attempted Escape, Gumm has not received a serious disciplinary charge since 2001 (in fourteen [14] years). At present, Gumm remains in the final 90-day phase of the SMU: Tier III Program – Phase 1: General Population Stepdown – with an "indefinite" status where he has been held since November 2010, far longer than both the prescribed 90-day phase period and the overall one year program period and longer than any other inmate in the program phase. (Note: Neither the SMU: Tier III Program Inmate Handbook or GDC SOP policy mention an indefinite status for the SMU: Tier III Program.)

From March 1, 2010 to August 1, 2013, after expungement of the disciplinary charge of Attempted Escape, Gumm received no reclassification status notices, status hearings, status reviews, or status appeals of his assignment to the SMU: Tier III Program. Every 90-days since the newly-implemented SMU: Tier III Program policy took effect on August 1, 2013, a three-member classification

Attachment 8

committee (a Security Member, a Care and Treatment Member and a Chairman, the SMU Unit Manager) has reviewed Gumm's assignment status and submitted its recommendation to the Warden and SMU Superintendent for final approval at the institutional level.

In turn, the Warden, the SMU Superintendent and two Deputy Wardens of Security (Defendants, excluding one Deputy Warden) have convened every 90 days since August 1, 2013 with the Field Operations Manager (Defendant) and the Assistant Field Operations Manager and reviewed the recommendation of the Classification Committee collectively for final approval at the executive level. During Gumm's last eight (8) 90-day classification status reviews at both levels, the Warden, the SMU Superintendent, both Deputy Wardens of Security and the Classification Committee all, respectively, recommended and/or approved Gumm's transfer from the SMU: Tier III Program.

## Conclusion

From his unconstitutional assignment to the SMU: Tier III Program for the past five years (and counting), Gumm has suffered significant and irreversible harm. In addition to the physical, mental and emotional anguish and psychological trauma generally associated with prolonged solitary confinement, Gumm has experienced lasting hardships and damaging effects exclusive to the extraordinary conditions and restrictions within the SMU: Tier III Program.

At one point, Gumm lost as much as fifty (50) pounds of total muscle mass from malnutrition due to substandard

food and restrictions on commissary and food packages. See, Institutional Medical File. Gumm has environmental sensitivity and constant bone and joint pain due to minimal outside recreation and exposure to sunlight (essential Vitamin D). See, Institutional Medical File.

Gumm is essentially estranged from all loved ones due to restrictions on visitation and telephone calls. Gumm has diminished social and communicative skills due to minimal human contact.

In 2014, Gumm received a parole denial due, in part at least, to his assignment to the SMU: Tier III Program. Gumm has another parole review in 2018 and remaining Senate-mandated rehabilitative classes to complete for parole eligibility.

And lastly, Gumm could not effectively challenge the conditions of his confinement through access to the courts sooner due to restrictions on law library services.

# Witness List
## (continued)

Belinda Davis
Assistant Field Operations Manager
Georgia Department of Corrections
300 Patrol Road
Forsyth, GA 31029

Rufus Logan
Unit Manager, SMU
Georgia Diagnostic & Classification Prison
P.O. Box 3877
Jackson, GA 30233

Monique Gholston
Counselor, SMU
Georgia Diagnostic & Classification Prison
P.O. Box 3877
Jackson, GA 30233

Dwayne Williams
Captain of Security, SMU
Georgia Diagnostic & Classification Prison
P.O. Box 3877
Jackson, GA 30233

Note: Rufus Logan, Monique Gholston and Dwayne Williams serve on the SMU Classification Committee as the Chairman, the Care and Treatment Member, and the Security Member. Belinda Davis participates in all executive level reviews of classification committee recommendations.

Attachment
11