**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **TIMOTHY DENVER GUMM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION No.:** |
| | ) | **5:15-CV-41-MTT-CHW** |
| | ) | |
| **Warden BRUCE CHATMAN,** | ) | |
| **Superintendent RODNEY McCLOUD,** | ) | |
| **Deputy Warden WILLIAM POWELL,** | ) | |
| **and GDOC Field Operation Mgr** | ) | |
| **RICK JACOBS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS CHATMAN, McCLOUD, POWELL AND JACOBS' BRIEF IN**
**SUPPORT OF MOTION TO DISMISS**

## I. STATEMENT OF FACTS

Plaintiff Timothy Gumm ("Plaintiff"), an inmate at Georgia Diagnostic and Classification Prison ("GDCP"), filed his § 1983 Complaint against Warden Chatman, Superintendent McCloud, Deputy Warden Powell and Field Operations Manager Jacobs ("Defendants") on February 12, 2015. The facts of the Complaint[1] are as follows.[2]

On January 26, 2010 Plaintiff and two other inmates made an unsuccessful attempt to escape from Telfair State Prison. On January 27, 2010 Plaintiff was transferred to GDCP for assignment to the Special Management Unit ("SMU").

---

[1] In response to the Court's screening Order (Doc. 6), Plaintiff filed a motion to amend his Complaint in order to "clarify" some of the allegations in his Complaint, which was granted by the Court. (Docs. 11, 15). This brief addresses facts alleged in both the original and amended complaint.

[2] For purposes of a motion to dismiss, the facts as alleged in the complaint and amended complaint are presumed to be true. *Wagner v. Daewoo Heavy Industries America Corp.*, 289 F.3d 1268, 1270 (11th Cir. 2002), *vacated on other grounds*, 298 F.3d 1228 (11th Cir. 2002).

Plaintiff was issued a disciplinary report ("DR") for attempted escape and destruction of State property. Plaintiff was found guilty; he appealed both charges were expunged on March 1, 2010. (Doc. 1, p. 5). Despite the expungement, Plaintiff has remained in the SMU. (Doc. 1, p. 7).

The SMU Policy was amended on August 1, 2013 and is now a Tier Program. Plaintiff's alleged due process violations encompass two distinct time frames: those arising under the SMU Policy and those arising under the Tier Program. (Doc. 11, pp. 6, 7).

Plaintiff alleges that the SMU Policy provided that inmates confined in the SMU be provided with "periodic status reviews" every thirty days. (Doc. 11, p. 3). Plaintiff claims that he received no hearings, periodic reviews or any "other due process." (Doc. 11, p. 5).

The Tier Program provides for "procedural due process protections and new incentive guarantees, including periodic status reviews every ninety (90) days." (Doc. 11, p. 2). Under the Tier Program, Plaintiff has appeared before the three member review committee "at least once" every ninety days. (Doc. 11, p. 3). At Plaintiff's last eight 90 day reviews, the Warden, SMU Superintendent, and two Deputy Wardens of Security have met with the Field Operations Manager and recommended Plaintiff's transfer from the Tier Program. (Doc. 1, p. 15). In spite of this recommendation "Defendants consistently failed" to implement the transfer, which Plaintiff asserts violates his procedural due process. (Doc. 11, p. 3).

By way of relief, Plaintiff seeks monetary damages and injunctive relief.

## II.  ARGUMENT AND CITATION OF AUTHORITY

### A. The Statute Of Limitations Bars Plaintiff's Claims.

An action is properly dismissed when the complaint itself establishes that it was filed outside the limitations period. *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*); *Penoyer v. Briggs*, 206 Fed. Appx. 962, 964 (2006).

The United States Supreme Court and the Eleventh Circuit Court of Appeals have agreed that Georgia's two-year statute of limitations for personal injury actions, O.C.G.A. § 9-3-33, applies to § 1983 claims brought in Georgia. *Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct. 938, 85 L.Ed.2d 254 (1985); *Williams v. City of Atlanta*, 794 F.2d 624 (11th Cir. 1986); *Giles v. Garwood*, 853 F.2d 876 (11th Cir. 1988).

In § 1983 cases, the statute of limitations begins to run when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). § 1983 actions accrue when the plaintiff knows or has reason to know that he has been injured. *Id.*; *see also Rozar*, 85 F.3d at 562. "This rule requires a court first to identify the alleged injuries, and then to determine when (Plaintiff) could have sued for them." *Rozar*, 85 F.3d at 562.

Plaintiff's disciplinary report was expunged on March 1, 2010. Plaintiff claims that he should have been released from the SMU at that time. Plaintiff should have filed his due process claims Complaint within two years of the date of his DR expungement: on or before March 1, 2012. Therefore any claims under the SMU Policy are barred by the statute of limitations.

**B. Plaintiff Has Failed To Exhaust His Administrative Remedies.**

Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). The PLRA requires inmates to exhaust their administrative remedies prior to filing a lawsuit:

> No action shall be brought with respect to prison conditions under Section 1979 of the  revised statutes of the United States, 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The PLRA "makes exhaustion a precondition to filing an action in federal court." *Leal v. Georgia Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001). An inmate incarcerated in a state prison must first comply with the grievance procedures established by the State Department of Corrections before filing a federal lawsuit under § 1983. *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999). In addition, inmates must fully exhaust their administrative remedies for each claim they wish to bring in suit; any unexhausted claims are to be dismissed. *Jones*, 549 U.S. at 219. The courts have no discretion to waive the exhaustion requirement. *Bryant v. Rich*, 530 F.3d 1368, 1373 (11th Cir. 2008).

The failure to exhaust administrative remedies is an affirmative defense. *Woodford v. Ngo*, 548 U.S. 81, 101(2006); *Jones*, 549 U.S. at 216. However, the Eleventh Circuit has described exhaustion as similar to a jurisdictional defense in that it "is a matter of abatement, and ordinarily does not deal with the merits." *Bryant*, 530 F.3d at 1374 (quotations and citations omitted). Thus, exhaustion of administrative remedies is properly addressed in a Fed.R.Civ.P. 12(b) motion to dismiss, rather than a Fed.R.Civ.P. 56 motion for summary judgment even though a motion to dismiss for failing to exhaust is not specifically enumerated in Fed.R.Civ.P. 12(b). *Id.* at 1374-76. Indeed, "[f]ederal courts traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules." *Id.* (quotations and citations omitted). Thus, when ruling on exhaustion in a motion to dismiss, the trial court may consider facts outside

of the pleadings and resolve factual disputes regarding exhaustion so long as the factual disputes do not decide the merits.  *Id.* at 1376-77.

The GDC maintains a grievance procedure to provide an open and meaningful forum for offender complaints and the resolution of those complaints. The procedure was amended effective December 10, 2012; Plaintiff filed grievances under both the former and the current grievance procedures.  (Attachment 1, Affidavit of Darryl Reid, ¶¶ 4, 29).  Although there are differences between the former and current grievance policies in the way actual grievances are handled, there are aspects of the grievance procedure which are common to both (*Id.* ¶ 4). Under both polices the grievance procedure is available to all inmates; no inmate may be denied access to the grievance procedure. (*Id.* ¶ 5). Inmates are provided an oral explanation of the grievance process upon entering the custody of the Department of Corrections and given a copy of the Orientation Handbook for Offenders, which includes instructions on the grievance procedure. Inmates also have access to a copy of the Grievance SOP at the facility or center library.  (*Id.* ¶ 5). Inmates can grieve "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections," other than those issues specifically excluded in the policy. (*Id.* ¶ 6). Neither policy has any provision allowing inmates to bypass the grievance process. (*Id.* ¶ 7).

**<u>Former grievance procedure</u>**

The former grievance policy required three steps: the filing of an informal grievance, a formal grievance and an appeal.  (*Id.* ¶ 8). The grievance process started when an inmate filed an informal grievance.  Informal grievance forms were available in the control rooms of all living units and provided to inmates in isolation and segregation areas upon request to staff. (*Id.* ¶ 9).

Informal grievances had to be filed no later than ten (10) calendar days from the date the inmate knew, or should have known, of the facts giving rise to the grievance, unless the time period for filing was excused for good cause shown.  A written response was provided to the inmate within ten (10) days of receipt. (*Id.* ¶ 10).

If an inmate did not agree with the response he could request a formal grievance.  (*Id.* ¶ 11). The formal grievance had to be filed within five (5) business days of receipt of the response to his informal grievance.  (*Id.* ¶ 12). The formal grievance was filed with the inmate's counselor, who prepared a report summarizing the facts of the complaint, the counselor's findings and a recommendation to the Grievance Coordinator, who would then review the documentation and recommend a response to the Warden. (*Id.* ¶¶ 13, 14). The Warden would then issue a written response, including the basis of the denial if the grievance was denied.  (*Id.* ¶ 15). The entire formal grievance process had to be completed within 30 calendar days from the date the formal grievance was filed with the counselor. (*Id.* ¶ 16).

If a formal grievance was denied, the inmate could appeal the decision to the Commissioner's office, within five (5) business days of the decision.  The appeal was forwarded to a Senior Investigator in the appropriate Inmate Affairs regional office. Once the review was completed, a written response was provided to the inmate. The Commissioner's office had 90 days to respond to the appeal, concluding the process. (*Id.* ¶ 17).

**Current grievance procedure**

The current grievance procedure consists of two steps:  (1) the Original Grievance and (2) the Central Office Appeal. (*Id.* ¶ 18).

An inmate must submit the Original Grievance no later than ten (10) calendar days from the date the inmate knew, or should have known, of the facts giving rise to the grievance.  (*Id.* ¶ 19).

Upon receipt of the Original Grievance, the Grievance Coordinator will screen the grievance in order to determine whether to accept it or recommend that the Warden reject it. (*Id.* ¶ 20). A grievance should be rejected if it raises a non-grievable issue, is not timely, includes threats, profanity, insults, or racial slurs that are not a part of the complaint, or if the offender already has two active grievances. (*Id.* ¶ 21).

A Grievance Coordinator's recommendation that a grievance should be rejected must be reviewed by the Warden.  (*Id.* ¶ 22). If the Warden rejects the grievance, the offender is given a copy of the rejection decision and he may appeal the rejection decision to the Central Office. (*Id.* ¶ 23).

If the Warden accepts the grievance, the grievance will be processed and investigated. (*Id.* ¶ 24). Upon completion of the investigation, the Grievance Coordinator will be provided with a report for review.  The Grievance Coordinator will then submit a recommended response to the Warden.  The Warden or the Warden's designee will issue a decision.  (*Id.* ¶ 25).

The Warden has 40 calendar days from the date the inmate gave the Grievance Form to the Counselor to deliver the decision to the inmate.  A one-time 10 calendar day extension may be granted. If the time allowed for the original grievance response to be given to the offender has expired, the offender may file a Central Office Appeal or, in the alternative, may wait until he receives the original grievance decision to file a Central Office Appeal.  (*Id.* ¶ 26).

An inmate has seven (7) calendar days from the date he receives the Warden's response to the Original Grievance to file a Central Office Appeal.  The Central Office has 100 calendar days from receipt of the appeal to deliver a decision to the offender. (*Id.* ¶ 27).

**Plaintiff's grievances**

As the Chief Counselor, Darrell Reid is familiar with the statewide grievance procedures and the grievance records of inmates who are or have been incarcerated at GDCP. (*Id.* ¶ 3). As of May 26, Plaintiff had filed eleven grievances while incarcerated at GDCP; seven under the former policy and four under the current policy. (*Id.* ¶ 29).

On August 23, 2010 Plaintiff filed informal Grievance No. 61526. He alleged that he was being held in the Special Management Unit ("SMU") for a disciplinary report that was expunged on March 1, 2010. The requested resolution was immediate transfer to general population. The grievance was rejected and Plaintiff did not file a formal grievance or an appeal. (*Id.* ¶ 30).

On February 21, 2011 Plaintiff filed informal Grievance No. 80062. He alleged that he was still being punished for an expunged disciplinary report. The requested resolution was that GDCP lift disciplinary sanctions, including his SMU status. The matter was not resolved and Plaintiff filed a formal grievance alleging the same and requesting immediate transfer to general population. The grievance was denied by Warden Carl Humphrey and Plaintiff appealed, alleging that Warden Humphrey had misunderstood the facts stated in the grievance. The appeal was denied due to the fact that multiple factors are considered any time an inmate's housing assignment is reviewed and the relevant documentation indicated that the decisions were appropriate. (*Id.* ¶ 31).

On August 1, 2011 Plaintiff filed informal Grievance No. 93578. He alleged that due to lack of personnel the SMU dorms were unsupervised for hours at a time, sometimes for entire shifts. The grievance was rejected because there was not enough information given to investigate the grievance. Plaintiff did not file a formal grievance or an appeal. (*Id.* ¶ 32).

On August 9, 2011 Plaintiff filed informal Grievance No. 94478. He alleged that untrained and uncertified personnel from general population were assigned to supervise SMU dormitories. The grievance was rejected because there was not enough information given to investigate the grievance. Plaintiff did not file a formal grievance or an appeal. (*Id.* ¶ 33).

On August 15, 2011 Plaintiff filed informal Grievance No. 94882. He alleged that Officer Cappo left his assigned post unsupervised for most of his twelve hour shift. The grievance was rejected. Plaintiff did not file a formal grievance or an appeal. (*Id.* ¶ 34).

On August 22, 2011 Plaintiff filed informal Grievance No. 96085. He alleged that on August 21 there was no officer assigned to A-wing in the SMU for the entire first shift, leaving him unsupervised and unattended. The issue was not resolved and Plaintiff filed a formal grievance. The grievance was partially granted by Warden Carl Humphrey. Plaintiff appealed and the appeal was denied due to the fact that corrective action had been taken. (*Id.* ¶ 35).

On August 24, 2011 Plaintiff filed informal Grievance No. 96440. He alleged that he was left on the yard unsupervised for six hours with no water or restroom. The issue was not resolved and Plaintiff filed a formal grievance. The grievance was partially granted by Warden Humphrey. Plaintiff appealed,; the appeal was denied due to the fact that corrective action had been taken. (*Id.* ¶ 36).

On March 28, 2012 Plaintiff filed informal Grievance No. 115289. He alleged that the prison supply officer refused to issue him his required clothing. The grievance was denied and Plaintiff filed a formal grievance. The grievance was denied by Warden Humphrey because all the items Plaintiff requested had been issued to him. Plaintiff did not appeal. (*Id.* ¶ 37).

On July 3, 2012 Plaintiff filed informal Grievance No. 124508. He alleged that maintenance refused to fix a broken light in his cell. Plaintiff dropped the grievance on August 21, 2012. (*Id.* ¶ 38).

On November 14, 2012 Plaintiff filed informal Grievance No. 137685. He alleged that SMU food services did not provide him with the same quantity and quality of food as provided to inmates in general population. The grievance was denied and Plaintiff filed a formal grievance. The grievance was denied by Warden Humphrey because SMU inmates were provided the same quantity and quality of food as general population inmates. Plaintiff appealed on January 14, 2013, the appeal was denied on February 18, 2013 and Plaintiff was notified on March 7, 2013. (*Id.* ¶ 39).

On December 25, 2014 Plaintiff filed Grievance No. 18771. He alleged that he was assigned indefinitely to the Tier III Program due to an expunged disciplinary report; he had committed no disciplinary infraction that would warrant assignment to Tier III Program since 2001. The grievance response from Warden Bruce Chatman was that although the disciplinary report was dismissed, Plaintiff was still considered to be a safety and security threat in general population.  Plaintiff appealed and the denial was upheld on March 3 2015. Plaintiff was notified that the denial was upheld on March 24, 2015. (*Id.* ¶ 40).

Plaintiff did not file a grievance of any kind naming Defendants Rick Jacobs, Bruce Chatman, Rodney McCloud or William Powell under either the former or the current policy. (*Id.* ¶¶ 41-44).

Three of Plaintiff's grievances concern alleged due process violations: two under the SMU Policy (Grievance Nos. 61526 and 80062) and one under the Tier Program (Grievance No. 18771).

With respect to the two grievances under the SMU Policy, when informal Grievance No. 61526 was rejected Plaintiff did not file a formal grievance or an appeal. Thus, Plaintiff did not exhaust Grievance No. 61526. With respect to Grievance No. 80062, although Plaintiff went through the appeal process, he did not name any Defendant in that grievance.[3] Although an inmate is not required to name each defendant in a grievance in order to properly exhaust a claim, the inmate is required to provide as much relevant information as he reasonably can in the administrative grievance process to alert prison officials to a problem. *See Jones v. Bock*, 549 US at 219; *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1218-1219 (11th Cir. 2010). In his grievance Plaintiff alleged that he was being punished by being held in the SMU for an expunged disciplinary report. Plaintiff knew or could easily ascertain who the responsible officials were. Of note, the grievance responses make clear that Defendant Chatman was not the Warden at the time Plaintiff filed those grievances. The only grievance responded to by Defendant Chatman was the December 25, 2014 grievance.

With regards to the one grievance filed under the Tier Program (Grievance No. 18771), while Plaintiff pursed this grievance through the appeal process, he did not allow that process to be completed <u>before</u> he filed this lawsuit, as required by the PLRA. "The time the [PLRA] set for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." *Goebert v. Lee County*, 510 F.3d 1312, 1324 (11th Cir. 2007). At the time Plaintiff filed this action on February 12, 2015, the Department of Corrections had not yet ruled on his appeal. Plaintiff, thus, did not give the grievance system "a fair opportunity to consider the grievance" before filing the instant suit. *See Woodford*, 548 U.S. at 95.

---

[3] Even if Plaintiff did properly exhaust Grievance No. 80062, as noted in Part A any claims under the SMU Policy are barred by the statute of limitations.

The exhaustion requirement of the PLRA is a precondition to filing an action in federal court. *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000). Plaintiff has not exhausted his administrative remedies with respect to any of his claims against any of the Defendants and his Complaint is due to be dismissed. *Woodford*, 548 U.S. at 84-85.

### C. Plaintiff Cannot Pursue Claims For Money Damages Against Defendants In Their Official Capacities.[4]

To the extent Plaintiff seeks monetary damages against Defendants in their official capacities his claims are barred by the Eleventh Amendment. The Eleventh Amendment bars suit against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest or when any monetary recovery would be paid from state funds. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Congress has not overridden the protections of the Eleventh Amendment in the context of §1983 lawsuits. Instead, the Supreme Court has repeatedly held that §1983 does not override a State's Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Kentucky*, 473 U.S. at 169 n. 17.

Finally, the State of Georgia has not consented to being sued under § 1983, but instead has preserved its sovereign immunity in the state constitution.  Specifically, the Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."  Ga. Const. Art. 1, Sec. II, Par. IX(f).  Thus, any claims seeking monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment.

---

[4] Plaintiff did not specify whether he was suing Defendants in their individual or official capacities, therefore this brief will address both.

Moreover, 42 U.S.C. § 1983 provides a cause of action for violations of federal constitutional or statutory rights by any "person" acting under color of law. The Supreme Court has ruled that the term "person" in this context is to be given its ordinary meaning; "a State is not a 'person' within the meaning of § 1983." *Will*, 491 U.S. at 65.  Furthermore, the Supreme Court has explained that the definition of a "State" includes State agencies and individual state officers sued in their official capacity.  *Id.* at 70-71.  Plaintiff cannot pursue money damages claims against Defendants in their official capacities.

**D.  Plaintiff's Complaint Fails To State A Claim.**

To state a section 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187-88 (11th Cir. 1999).  To survive a motion to dismiss, a complaint must allege sufficient facts that give rise to a "plausible" suggestion of unlawful conduct.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). This standard requires more than a sheer possibility that a defendant has acted unlawfully.  *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009). Conclusory allegations should be ignored, and the remaining well-pleaded facts must plausibly suggest unlawful conduct.  *Iqbal*, 556 U.S. at 678-80.

**1.  Plaintiff fails to state a procedural due process claim**

A section 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty interest or property interest; (2) state action; and (3) constitutionally inadequate process.  *See*, *e.g.*, *Grayden v. Rhodes*. 345 F.3d 1225, 1232 (11th Cir. 2003).  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Wilkinson v. Austin*, 545 U.S.

209, 221 (2005); *see also Sandin*, 515 U.S. at 484 (providing that there is no liberty interest or other right inherent in the Constitution not to be placed in disciplinary segregation); *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (providing that the Due Process Clause does not "create an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters") (quotations and citations omitted).

States may create liberty interests by conferring benefits to prisoners such that the deprivation of those benefits imposes an "atypical and significant hardship" on an inmate in relation to the "ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). When an inmate alleges that his conditions of confinement trigger a due process right, there is no liberty interest and no constitutional violation if the "atypical and significant hardship" standard announced in *Sandin* is not met. *See*, *e.g.*, *Magluta v. Samples*, 375 F.3d 1269, 1282 (11th Cir. 2004). Moreover, if no constitutionally protected liberty interest is established, a court need not reach the question of what process is due. *See, e.g., Wilkinson*, 545 U.S.at 221. "After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin*, 515 U.S. at 484).

Plaintiff alleges that conditions for inmates housed in segregation under the SMU Policy and Tier Program are more restrictive than those of inmates in general population (Doc. 1, pp. 11-13); however he has not alleged any fact to show that he suffers an "atypical and significant hardship" when compared to other inmates housed in segregation. *Sandin*, 515 U.S. at 484.

With respect to Plaintiff's claim that he was denied parole in part due to his assignment to the Tier Program and that he has not been allowed to take mandated classes to complete parole

eligibility "[t]he law is well settled that an inmate has no constitutionally protected interest in rehabilitative or educational programs as the failure to place an inmate in these programs does not impose "atypical and significant hardship on the inmate in relation to the ordinary incident of prison life." *See Fareed v. Alabama*, 2001 U.S. Dist. LEXIS 56098 (Ala. April 5, 2011). The law is equally clear that Georgia inmates have no constitutional liberty interest in parole.  *See*, *e.g.*, *Sultenfuss v. Snow*, 35 F.3d 1494, 1499 (11th Cir. 1994).

Plaintiff cannot establish a liberty interest protected by the Due Process Clause. Accordingly, he fails to state a procedural due process claim.

Even if Plaintiff could establish a protected liberty interest such that he would be entitled to procedural due process, his own Complaint belies his allegation of a due process violation. Procedural due process calls for "such procedural protections as the particular situation demands."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).  The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).  A procedural due process violation is not complete unless and until the state fails to provide process. *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).  Importantly, a state may cure a procedural deprivation by providing a later procedural remedy; thus, it is only when the state refuses to provide a process sufficient to remedy the procedural deprivation that a constitutional violation arises.  *Id.*

Notwithstanding that Plaintiff's claims under the SMU Policy are time barred, that policy has been changed and Plaintiff is now being afforded review hearings. According to Plaintiff's complaint, he has appeared before the three member review committee "at least once" every ninety days, "in accordance with" the Tier Program policy. (Doc. 11, p. 3).  Defendants Chatman, McCloud and Powell have "recommended and/or approved" his transfer from the

SMU; although Plaintiff's Complaint is unclear, it appears that Defendant Jacobs (the Field Operations Manager) has not followed the recommendation. (Doc. 1, p. 15). Clearly Plaintiff has been provided with due process; he is unhappy with the result. Plaintiff does not state a procedural due process violation.

With respect to Plaintiff's claims that Defendants violated Georgia Department of Corrections Standard Operating Procedures, a violation of state statute or departmental policy does not determine whether there was a constitutional violation. *See Davis v. Scherer*, 468 U.S. 183, 194-95 (1984); *Foy v. Holston*, 94 F.3d 1528, 1532 n. 4 (11th Cir. 1996).

Plaintiff does not state a claim for a due process violation and his Complaint is due to be dismissed.

> **2. To the extent that Plaintiff's claims against Defendants are premised on vicarious or supervisory liability his claims are not cognizable in a §1983 action.**

To the extent that Plaintiff attempts to hold any Defendant responsible for another's actions through vicarious liability, he does not have a claim under 42 U.S.C. § 1983. A § 1983 claim cannot be based upon vicarious liability. *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987). Without some degree of personal participation in the alleged deprivation of a plaintiff's rights by the defendant in a suit under 42 U.S.C. § 1983, no liability exists. *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986). "In a §1983 suit … each government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Stated another way, § 1983 liability cannot be imposed upon a defendant whose actions were not the proximate cause of the constitutional injury. *Williams v. Bennett*, 689 F.2d 1370, 1389 (11th Cir. 1989), *cert denied*, 464 U.S. 932 (1983). Plaintiff is required to allege that each

named Defendant actually participated in the alleged constitutional violation or exercised control or direction over the alleged violation. *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985).  There must also be an affirmative link between the Defendants' actions and the alleged deprivation of a constitutional right. *Gilmere*, 774 F.2d at 1497; *Brown v. Smith*, 813 F.2d 1187, 1187 (11th Cir. 1987) (concluding that a 42 U.S.C. §1983 claim cannot be based upon vicarious liability).

In his Complaint, Plaintiff refers generally to "prison officials" and "Defendants." He does not state what any named Defendant has done to deprive him of any constitutional right. Moreover, as shown above Plaintiff has not alleged facts to show that there was any deprivation of any constitutional right by Defendants. To the extent Plaintiff is attempting to hold any Defendant liable for any others' alleged actions, he does not have a claim under § 1983.

### E. Defendants In Their Individual Capacities Are Entitled To Qualified Immunity.

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The immunity is decided as a matter of law and is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  In the qualified immunity analysis, the relevant question to be answered is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

To avail of the immunity, a defendant must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Vinyard*, 311 F.3d at

1346.  Once this showing is made, the burden shifts to the plaintiff to show that the law was clearly established.  *Id.*  A plaintiff can meet this burden only by pointing to constitutional provisions, federal statutes, and binding judicial decisions of the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court clearly establishing the law.  *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1200 n.6 (11th Cir. 2007); *Marsh,* 268 F.3d at 1033 n.10.

When determining whether a defendant was engaged in discretionary acts, the question that must be answered is whether he was pursuing legitimate job-related goals through means that were within his power to utilize.  *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).  The inquiry does not focus on whether it was within a defendant's authority to commit the allegedly illegal act.  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Rather, the question is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."  *Id.* (*quoting In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)).  Courts look to the "general nature of the defendant's action, putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances."  *Holloman*, 370 F.3d at 1266.  Here, Defendants are being sued pursuant to their duties as officials with the GDC and at GDCP. The allegations establish that Defendants were acting within their discretionary authority and therefore the burden shifts to Plaintiff to show a violation of a clearly established constitutional right.

For the reasons stated in Part D above, Plaintiff has not stated any constitutional violation. Moreover, there is no clearly established law that would have put Defendants on notice that any of their alleged actions would violate the constitution.

Whether the law is clearly established looks to whether the Defendants had fair notice that their conduct was unlawful.  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  General principles of law are not specific enough to provide fair warning.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  For the law to be clearly established to the point that qualified immunity does not apply, it must have been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the government official's place, that "what he is doing violates federal law."  *Anderson*, 483 U.S. at 640.

Here, Plaintiff has failed to allege any conduct that has been clearly established to violate the constitution.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (no liberty interest when no "atypical and significant hardship"); *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (no procedural due process violation unless and until the state fails to provide process); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985) (plaintiff must allege that each named Defendant actually participated in the alleged constitutional violation or exercised control or direction over the alleged violation).

Defendants in their individual capacities are entitled to qualified immunity.

**F. Plaintiff Is Not Entitled To Injunctive Relief.**

The PLRA altered the relief that may be awarded in prison litigation, consistent with the Supreme Court's view that federal courts should have reduced involvement in state prison systems.  *See, e.g., Parrish v. Alabama Dep't of Corrections*, 156 F.3d 1128, 1129 n.2 (11th Cir. 1998).  The PLRA limits the authority of a court to enter prospective relief.[5]  Prospective relief may not be granted unless the court finds that: 1) the relief is narrowly drawn; 2) the relief extends no further than necessary to correct the violation of a Federal right; and 3) the relief is

---

[5] The PLRA defines prospective relief as all relief other than compensatory monetary damages. 18 U.S.C. § 3626(g).

the least intrusive means necessary to correct the violation of a Federal right.  *See* 18 U.S.C. § 3626.  Plaintiff's requested relief is not narrowly drawn, nor would it be the least intrusive means to correct any violation. Plaintiff seeks to be reassigned from the Tier Program and "protection" from being assigned "its equivalent" at any other institution he may be transferred to in the future. (Doc. 1, p. 6). Clearly the requested relief would necessitate the Federal Court's involvement in the State's prison system. Plaintiff is not entitled to injunctive relief.

Moreover, as discussed *supra*, Plaintiff has failed to establish a violation of a Federal right.  Absent a violation, Plaintiff is not entitled to the remedy sought.  *See* 18 U.S.C. § 3626. Accordingly, Plaintiff's claims for injunctive relief must be dismissed.

## III.  CONCLUSION

For the above and foregoing reasons, Defendants respectfully request that this Court grant their motion to dismiss Plaintiff's Complaint.

Respectfully submitted, this the 4th day of June, 2015.

SAMUEL S. OLENS          551540
Attorney General

KATHLEEN M. PACIOUS      558555
Deputy Attorney General

s/Devon Orland
DEVON ORLAND             554301
Senior Assistant Attorney General

s/Susan E. Teaster
SUSAN E. TEASTER         701415
Assistant Attorney General