IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TIMOTHY GUMM, on behalf of himself and others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) NO. 5:15-CV-41-MTT-CHW |
| ERIC SELLERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY CLASS**

This case is about Georgia prison officials holding prisoners in indefinite solitary confinement for years on end without meaningful review. The Special Management Unit (SMU) is Georgia's most restrictive prison facility. Prisoners there are denied nearly all human contact and are held in isolation cells for 23 to 24 hours per day on average. Three years after Plaintiff Timothy Gumm was first assigned to the SMU, prison officials familiar with his record and behavior recommended him for a transfer to a general population housing assignment. But despite repeated recommendations for transfer over the course of four years, Gumm remains in the SMU with no guidance about how to get out. On behalf of the many similarly situated prisoners harmed by Defendants' policies and practices, Gumm seeks to enjoin Defendants' unlawful conduct.

## PROPOSED CLASS

Plaintiff Timothy Gumm seeks to certify a class defined as follows:

> All persons who are or in the future will be assigned to the Special Management Unit at Georgia Diagnostic & Classification Prison.

## BACKGROUND

The Special Management Unit (SMU) at Georgia Diagnostic & Classification Prison ("Georgia Diagnostic") is the only prison facility of its kind in Georgia. (Doc. 73 ¶ 3.) It is a freestanding, 192-bed unit that holds a select group of prisoners under the most restrictive conditions of confinement in Georgia's prison system. (*Id.* ¶¶ 3, 42-43.)

Prisoners in the SMU are divided into six 32-cell "wings" with various levels of privileges. (*Id.* ¶¶ 43, 54-60.) Regardless of assigned wing and privilege level, prisoners are normally allowed out of their cells for only three reasons: (1) up to five hours per week of recreation alone in a nine-by-eighteen-foot cage; (2) up to three showers per week; and (3) up to four family visits per month behind a glass barricade. (*Id.* ¶¶ 45-81.) The rest of the time, prisoners in the SMU remain alone in seven-by-thirteen-foot isolation cells with solid metal doors to prevent conversation with other prisoners. The cells are equipped with metal covers over the exterior windows and sliding metal covers over cell-door windows to prevent prisoners from seeing outside of the cell. (*Id.* ¶¶ 45-53.) Prisoners take all meals

alone in their cells.  (*Id.* ¶ 64.)  If they leave their cells for any reason, they must be handcuffed behind the back and escorted by at least two correctional officers.  (*Id.* ¶ 73.)  They cannot participate in work details, and they have few opportunities for educational classes or programs.  (*Id.* ¶¶ 74-78.)  Prisoners may be summarily moved to a more restrictive wing for any perceived misconduct.  (*Id.* ¶ 61.)

Prisoners in the SMU are denied meaningful review of their confinement.  Although several policies have applied to the SMU over the years, the stated goal of the SMU since 2012 has been to incentivize SMU prisoners to improve their behavior so that they can be housed in the general prison population.  (*Id.* ¶ 98.)  To that end, every applicable policy since 2012 has required a Review Committee to hold hearings every 90 days to decide what level of restrictions are appropriate for a particular prisoner and whether the prisoner should be transferred elsewhere.  (*Id.* ¶ 103.)  However, the Review Committee's determination that a prisoner is fit for release from the SMU may be overruled by certain officials in the Georgia Department of Corrections headquarters, known as the "Central Office."  (*Id.* ¶ 110.)  Prisoners are given no meaningful explanation for the Central Office's decision, and no guidance about what they must do to qualify for a transfer.  (*Id.*)

Named Plaintiff Timothy Gumm was assigned to the SMU in January 2010 for an alleged escape attempt at Telfair State Prison.  (*Id.* ¶¶ 36-38.)  During his time in the SMU, Gumm has not had a single disciplinary infraction.  (*Id.* ¶ 33.)

Gumm has been recommended by the Review Committee for a transfer out of the SMU on at least 12 separate occasions since 2012, with the concurrence of Georgia Diagnostic's warden in each recommended transfer.  (*Id.* ¶¶ 96-163.)  Each time, officials in the Central Office have denied the transfer without any opportunity for Gumm to be heard, without any explanation for the decision, and without any guidance to Gumm about what more he can do, if anything, to merit a transfer. (*Id.*)  In the meantime, he remains confined under conditions that cause serious and lasting harm.  Gumm expects to show that the prolonged and extreme isolation imposed on every prisoner in the SMU violates society's evolving standards of decency and causes serious physical and mental health problems that begin within weeks of a prisoner's confinement, increase in severity over time, and endure long after the prisoner is released from confinement.  (*Id.* ¶¶ 172-89.)

Gumm seeks several forms of relief, including damages and a prison transfer.  But he requests class certification only with respect to his claims for prospective relief against generally applicable procedures and conditions (*see* Doc. 73 ¶¶ 223-30 (Count I); *id.* ¶¶ 235-40 (Count III)) that apply to prisoners while they are housed in the SMU.  Up to 192 prisoners are held in the SMU at a given time (*see* Doc. 60-1 ¶¶ 8-9 (Bishop Decl.)), and many prisoners will be assigned to the SMU in the future.  All are or will be subject to the same serious risk of harm and perfunctory review as Gumm under Defendants' policies and practices.

## ARGUMENT

A plaintiff seeking class certification must satisfy each of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and at least one of the three criteria for certification under Rule 23(b). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614-15 (1997); *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 288 (M.D. Ga. 2016); *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 697-98 (M.D. Ga. 2002).

Class certification must be addressed "[a]t the earliest practicable time" after the complaint is filed. Fed. R. Civ. P. 23(c)(1)(A). Because a class certification order is inherently tentative and capable of being altered or amended to account for later developments in a case, Fed. R. Civ. P. 23(c)(1)(C), it is appropriate to rule on class certification at the pleading stage. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *see also Carriuolo v. General Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (noting "certification of a class is always provisional in nature"); *cf. Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("In some instances, the propriety vel non of class certification can be gleaned from the face of the pleadings."); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 484 (N.D. Ga. 2006). As discussed below, the pleadings and evidence submitted in this case to date show that Gumm meets the requirements of Rule 23(a) and Rule 23(b)(2).

## I.  THE REQUIREMENTS OF RULE 23(A) ARE MET.

A plaintiff seeking class certification must meet four factors under Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must be able to fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  These prerequisites, known respectively as numerosity, commonality, typicality, and adequacy, are easily satisfied in this case.

### A.  Numerosity

The first requirement of Rule 23(a) is "that a class be so numerous that joinder of all members is impracticable."  *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 698 (M.D. Ga. 2002) (citing Fed. R. Civ. P. 23(a)(1)).  "In evaluating whether the numerosity requirement has been met, precise enumeration of class members is not necessary for the action to proceed as a class action," but the plaintiff must "provide some basis that a good faith estimate of the size of the potential class satisfies the numerosity requirement."  *Id.*  A district court, in estimating the class size, is "permitted to make common sense assumptions in order to find support for numerosity."  *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 485 (N.D. Ga. 2006).  There is "no strict numerical test for determining

impracticability of joinder," but courts have indicated "that a class of more than 40 persons could satisfy the numerosity requirement." *Upshaw*, 206 F.R.D. at 698 (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members."); *cf. Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) (giving liberal construction to the numerosity prong in a case seeking injunctive relief on behalf of future class members because "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement").[1]

According to Defendants, up to 192 prisoners are held in the SMU at any given time. (Doc. 60-1 ¶¶ 8-9.)[2] There is also a future stream of class members who will suffer the same injury absent injunctive relief because Defendants' policies and practices are ongoing and new prisoners are routinely transferred into the SMU. Traditional joinder is not practicable under these circumstances. *See*

---

[1] Demonstrating that "joinder is impracticable does not mandate that joinder is impossible; rather, Plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 689 (N.D. Ga. 2003) (quoting *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 698 (N.D. Ga. 1991)).

[2] Courts do not require the parties to know in advance the exact number of class members. *Upshaw*, 206 F.R.D. at 698; *see also Evans v. U.S. Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983) ("[A] plaintiff need not show the precise number of members in the class."); *see also Meyer v. Citizens and So. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("[T]he fact that the precise number of potential members of the class cannot be ascertained does not bar class certification."). Even if numerosity were a close question here, which it is not, "[w]here the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity." *Evans*, 696 F.2d at 930.

7

*Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (finding joinder impracticable where future class members could not yet be identified).[3]

In addition to the future stream of SMU prisoners suffering the same violations, other factors highlight the undesirability of individual lawsuits here. The judicial resources that would be expended in repeated litigation and discovery, the potential for multiple or conflicting judgments inherent in many individual cases concerning Defendants' review procedures, and the lack of effective access to the legal system by prisoners, all highlight the advantages offered by class certification in this case.  *See Kilgo,* 789 F.2d at 878 ("Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion.").  Resolving the facts and legal issues concerning Defendants' policies and practices in separate lawsuits would entail proceedings and discovery repeatedly litigated in this Court, whereas class certification "will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

---

[3] *See also* 5 James W. Moore et al., Moore's Federal Practice–Civil § 23.22(f) (3d ed. 1999) ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future.  Courts in these cases often find that joinder of separate suits would be impracticable because those who have not yet been injured, or who do not know that they have been injured, are unlikely to join a lawsuit."); Newberg on Class Actions § 25:4 (4th ed.) ("Even a small class of fewer than 10 actual members may be upheld if an indeterminate number of individuals are likely to become class members in the future or if the identity or location of many class members is unknown for good cause.").

Moreover, the ability of individual SMU prisoners to bring separate lawsuits is limited because they lack the resources or freedom of movement to investigate and develop their individual claims, let alone find a lawyer to represent them to recover the modest damages and limited attorney's fees available. *See Upshaw*, 206 F.R.D. at 697 ("[T]he class-action device also provides a key to the courthouse for parties with legitimate claims whose access to justice may be slammed shut because the individual amounts of their claims make it economically infeasible to pursue them on an individual basis.").[4]  Finally, many prisoners in the SMU may not be aware that they have valid claims because Defendants mislead prisoners into believing that their confinement in the SMU will be reviewed in a meaningful way. *See Gerardo v. Quong Hop & Co.*, 2009 WL 1974483, at *2 (N.D. Cal. 2009) (certifying class where "potential class members [were] not legally sophisticated").

Finally, a class action will not present significant difficulties in case management.  The class is easily ascertainable from Defendants' records and the class is extremely limited in geographic scope to people held in a single prison facility.  Requiring separate individual lawsuits against Defendants likely would result in far greater manageability problems, such as duplicative discovery, repeated adjudication of similar controversies in this Court, and excessive costs.

---

[4] *See Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) (holding that joinder was impracticable in a suit for injunctive relief against Medicaid policy on behalf of poor and elderly or disabled people who could not bring individual lawsuits without hardship).

### B.     Commonality

The second Rule 23(a) requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is met if there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982)) (internal quotation marks omitted); *Upshaw*, 206 F.R.D. at 699 ("Class relief is particularly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class."). Traditionally, the Rule asks whether the disputed questions are capable of class-wide proof or resolution. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Claims need not be identical to satisfy this requirement, and variations within the class are permissible. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000); *see Gregory v. Preferred Financial Solutions*, No. 5:11-CV-422, 2013 WL 6632322, at *6 (M.D. Ga. Dec. 17, 2013) (holding "commonality is not defeated simply because the putative class members may have interacted with different individuals or had different experiences" concerning challenged program).

Although there need not be both common issues of law and fact under Rule 23(a), this case presents several critical and dispositive issues of both law and fact

that are common to the class. Common questions of fact include:

- Whether and to what extent prisoners in the SMU are held in solitary confinement;

- Whether and to what extent conditions in the SMU result in psychological, physical, or other harm to SMU prisoners;

- Whether and to what extent conditions in the SMU are different from those in the general prison population;

- Whether and to what extent prisoners in the SMU are given notice of how decisions are made regarding their placement in and/or transfer from the SMU;

- Whether and to what extent prisoners in the SMU are given notice of the reasons for their placement and/or continued confinement in the SMU; and

- Whether prisoners in the SMU have had their confinement status reviewed by prison officials and, if so, what that review consisted of.

These questions show that the central factual issues in this case—concerning Defendants' solitary confinement practices and review procedures—will be common to all putative class members, all of whom are subject to the same standardized policies and practices.

The most important questions of law common to the class members include the following issues:

- Whether the putative class members have a liberty interest in avoiding confinement in the SMU;

11

- Whether Defendants' procedures for reviewing prisoners' confinement in the SMU satisfy the requirements of the Due Process Clause and, if not, what procedures are required in light of the liberty interest at stake;

- Whether Defendants' policies and practices are irrational, arbitrary, and/or capricious;

- Whether Defendants' policies and practices violate the Fourteenth Amendment Due Process Clause; and

- Whether prolonged and/or indefinite confinement in the SMU violates the Eighth Amendment's prohibition on cruel and unusual punishment.

The common questions of fact and law listed above are those necessary to determine the Defendants' liability with respect to anyone held in the SMU. Therefore, there are factual and legal questions in this case whose resolution will advance the legal claims of all class members. *See Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2562 (2011). The answers to these questions will determine, for the class as a whole, whether the Defendants are violating the rights of Plaintiff Gumm and the putative class members.[5]

### C. Typicality

Rule 23(a)'s typicality requirement ensures that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and

---

[5] This Court has previously noted "the similar claims and fact patterns" involved in at least ten other cases brought by SMU prisoners. (Doc. 62 at 1-2.)

suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray,* 244 F.3d at 811.  "Typicality, however, does not require identical claims or defenses." *Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Rather, it "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Prado-Steiman*, 221 F.3d at 1279.  "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg*, 741 F.2d at 1337.  As long as the claims of the named plaintiff and the class members arise from the same practice and the same underlying legal theory, the typicality requirement "can be satisfied even if factual distinctions exist between the claims of the class representatives and the other members of the class." *Upshaw*, 206 F.R.D. at 699; *see also, e.g.*, *Gregory*, 2013 WL 6632322, at *8-9 (holding named plaintiffs' claims were typical of class members' claims even though certain class members might have signed arbitration clauses that the defendant had declined to enforce against the named plaintiffs, and one named plaintiff was potentially subject to a unique defense that might not apply to other class members).[6]

---

[6] *See also Hardy v. District of Columbia*, 283 F.R.D. 20, 25 (D.D.C. 2012) (typicality requires only that "the class representatives have suffered injuries in the same general fashion as absent class members"); Moore's Federal Practice–Civil § 23.24 ("Because the claims need only share the same essential characteristics and need not be identical, courts have concluded that the typicality requirement is not highly demanding.").

Here, Gumm's legal claims are the same as the legal claims of the other members of the proposed class, and Defendants injured "each class member using the same practices and procedures." *See Upshaw*, 206 F.R.D. at 699. Gumm and all putative class members are or will be held in indefinite solitary confinement in the SMU without meaningful review. Gumm and the class members are likewise threatened with the same ongoing and future injury as a result of Defendants' policies and practices: continued cruel and unusual punishment, and continued denial of due process. *See* Newberg on Class Actions § 23:4 (4th ed.) ("[T]he typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members.").

Gumm's claims accordingly rely on the same legal theories as the claims of all other class members concerning whether Defendants' policies and practices are unconstitutional. *See Prado-Steiman*, 221 F.3d at 1279 n.14 (noting "a strong similarity of legal theories will satisfy the typicality requirement"). The same proof concerning Defendants' policies and practices, and the same legal arguments about whether those policies and practices are unlawful, will be critical for each class member in this case to establish the liability of the Defendants. Therefore, if Gumm succeeds in showing that Defendants' policies and practices with respect to his placement in the SMU are unlawful, that ruling will benefit every other member of the class. *See Upshaw*, 206 F.R.D. at 699-700.

**D.     Adequacy**

Plaintiff Gumm, the class representative in this case, will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis involves "two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted).

Gumm is an adequate representative of the class because his interests in vindicating his particular legal claims are completely aligned with the interests of the other class members in vindicating their own claims. Like other class members, Gumm has a strong interest in receiving meaningful review of his SMU confinement. Moreover, Gumm's conduct as a pro se litigant—including his actions in amending his complaint, moving for a preliminary injunction, and seeking discovery from Defendants—shows that he has a strong subjective interest in the case and familiarity with "the substance of his claims." *See Jones*, 317 F.R.D. at 292. There are no known conflicts of interest among the members of the proposed class, all of whom have a similar interest in vindicating their constitutional rights in the face of their unlawful treatment by Defendants.

Plaintiff is represented by attorneys from the Southern Center for Human Rights who have experience litigating complex civil rights matters in federal court.

They are familiar with the Tier III Program, conditions in the SMU, and legal standards governing administrative segregation, having represented other SMU prisoners bringing similar claims. *See Whatley v. Ward*, No. 5:15-CV-373 (M.D. Ga.) (represented plaintiff in obtaining transfer from SMU); *Turner v. Upton*, No. 16-7212 (U.S.) (represented plaintiff in petitioning Eleventh Circuit for rehearing and petitioning Supreme Court for writ of certiorari). Counsel also have investigated Defendants' practices, obtained records from the Georgia Department of Corrections, responded to numerous letters from SMU prisoners, and interviewed numerous witnesses. As a result, counsel are familiar with Defendants' practices and with relevant laws and procedures relating to those practices. Attorneys from the Southern Center for Human Rights have litigated numerous cases involving prisoners[7] and numerous class actions in the state and federal courts.[8] Therefore, the interests of the class members will be fairly and

---

[7] *See, e.g.*, *Davison v. Nicolou*, No. 6:16-CV-39 (S.D. Ga.) (involving Eighth Amendment claims against prison officials who caused prisoner's death due to lack of medical care for bacterial infection; claims pending); *MacClain v. Owens*, No. 4:13-CV-210 (N.D. Ga.) (involving Eighth Amendment claims against prison officials for failing to protect prisoner from stabbing death by other prisoner; disposed of by settlement agreement); *Hicks v. Hetzel*, No. 2:09-CV-155 (M.D. Ala.) (involving Eighth Amendment claims against prison officials on behalf of class of prisoners at risk of violence due to overcrowding, understaffing, and failure of officials to control violence; disposed of by settlement agreement).

[8] *See, e.g.*, *Harrison v. Consol. Gov't of Columbus, Ga.*, 4:16-CV-329 (M.D. Ga.) (putative class action challenging unlawful case-dismissal fees imposed on crime victims); *Luse v. Sentinel Offender Services, LLC*, No. 2:16-CV-30 (N.D. Ga.) (challenging unlawful urine screening by private probation company); *Walker v. City of Calhoun,* No. 4:15-CV-0170 (N.D. Ga.) (challenging unlawful post-arrest procedures that discriminate against indigent defendants); *Edwards v. Red Hills Community Probation, LLC*, 1:15-CV-67 (M.D. Ga.) (putative class action challenging practice of detaining misdemeanor probationers to coerce payment); *Jones v. Grady*

adequately protected by Plaintiff and his attorneys.

## II.     THE REQUIREMENTS OF RULE 23(B)(2) ARE MET.

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Melanie K. v. Horton*, No. 1:14-cv-710-WSD, 2015 WL 1308368, at *5 (N.D. Ga. March 23, 2015).

In this case, Defendants have held prisoners under an extreme form of solitary confinement for indefinite and extraordinarily lengthy periods of time, and without meaningful review of their confinement. The class therefore seeks declaratory and injunctive relief to prevent Defendants from continuing their perfunctory system of "review", to compel Defendants to adopt procedures commensurate with the prisoners' weighty liberty interest in avoiding prolonged isolation, and to bar Defendants from inflicting cruel and unusual punishment. The relief sought would end Defendants' violations of the Constitution and benefit the entire class.

---

*County*, No. 1:13-CV-156 (M.D. Ga.) (challenging policy of assessing unauthorized "administrative costs" on misdemeanor defendants); *Whitaker v. Perdue*, No. 4:06-CV-140 (N.D. Ga.) (challenging statute imposing severe residency restrictions on people designated as sex offenders); *N.P. ex rel. Darden v. State*, No. 2014-CV-241025 (Fulton Cty. Super. Ct.) (challenging denial of right to counsel to indigent juveniles and adults accused of crimes); *Flournoy v. State,* No. 2009-CV-178947 (Fulton Cty. Super. Ct.) (challenging denial of indigent plaintiffs' constitutional right to appellate counsel in their criminal appeals); *People Accused of Crimes v. Crawford*, No. 2008-CV-151884 (Fulton Cty. Super. Ct.) (challenging denial of the right to counsel on behalf of a class of indigent defendants).

Because the putative class challenges the Defendants' scheme as unconstitutional and seeks declaratory and injunctive relief that would benefit every member of the class in the same way, certification under Rule 23(b)(2) is appropriate. *See, e.g.*, *Melanie K.*, 2015 WL 1308368, at *5; *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002) ("Rule 23(b)(2) certification is appropriate where plaintiffs seek declaratory or injunctive relief for class-wide injury."); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) (stating Rule 23(b)(2) applies to "claims resting on the same grounds and applying more or less equally to all members of the class").[9]

The requirements of Rule 23(b)(2) are "almost automatically satisfied" in actions like this one, which seek injunctive relief for common legal claims. *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *see also Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 465 (S.D. Fla. 2002). Certification of the injunctive class under Rule 23(b)(2) is warranted because Timothy Gumm and the other class members are all injured by the same ongoing scheme. Absent the relief that they seek, they will continue to be harmed by the same unconstitutional set of policies, practices, and procedures.

---

[9] Rule 23(b)(2) arose out of experience "in the civil rights field," *Amchem*, 521 U.S. at 614 (citation omitted), in which the government typically treats a whole class in an unconstitutional manner based on a single law or government policy. "Rule 23(b)(2) was promulgated in 1966 essentially as a tool for facilitating civil rights actions." Moore's Federal Practice § 23.43; *see also* Newberg on Class Actions § 1:3 (5th ed.) ("Rule 23(b)(2) . . . is typically employed in civil rights cases and other actions not primarily seeking money damages. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit.").

## CONCLUSION

The Court should certify a class consisting of all persons who are or will in the future be assigned to the Special Management Unit at Georgia Diagnostic & Classification Prison.

Respectfully submitted,

/s/ Ryan Primerano
Sarah Geraghty
Ga. Bar No. 291393
Ryan Primerano
Ga. Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
sgeraghty@schr.org

*Counsel for Timothy Gumm*

March 14, 2017