**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

TIMOTHY GUMM,
ROBERT WATKINS,

Plaintiffs,

v.

BENJAMIN FORD, *et al.*,

Defendants.

CIVIL ACTION

NO. 5:15-CV-41-MTT-CHW

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

The parties jointly move the Court for approval and adoption of a class action settlement agreement resolving all injunctive claims in this case. For the reasons discussed below, the parties request that the Court order: (a) preliminary certification of the settlement class and appointment of Plaintiffs' counsel as class counsel; (b) preliminary approval of the settlement agreement; (c) approval of a process for giving notice to the class; (d) scheduling of a final fairness hearing; and (e) following the final fairness hearing, final certification of the settlement class, final approval of the settlement agreement, and adoption of the settlement agreement by incorporation as the order of the Court.

**BACKGROUND**

On February 12, 2015, Plaintiff Timothy Gumm brought this action under 42 U.S.C. § 1983 challenging conditions and practices at the Special Management Unit ("SMU") at Georgia Diagnostic & Classification Prison ("Georgia Diagnostic"). (Doc. 1.) In October 2016, the Court appointed attorney Sarah Geraghty of the Southern Center for Human Rights to represent Plaintiff Gumm. (Doc. 70.) After the parties engaged in several months of discovery, Plaintiff

Gumm filed an amended complaint in March 2017 (Doc. 73), asserting claims for declaratory and injunctive relief on behalf of a putative class of all prisoners who are or will be held in the SMU. The class claims were brought under the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Cruel and Unusual Punishments Clause. The complaint alleged that confinement in the SMU created a substantial risk of serious harm to prisoners, and that prisoners were held in the SMU for years without meaningful procedural safeguards. The complaint sought classwide injunctive relief to remedy allegedly unconstitutional review procedures and conditions of confinement in the SMU. In May 2018, Gumm filed a further amended complaint naming SMU prisoners Robert Watkins and Johnny Mack Brown as additional plaintiffs and class representatives. (Doc. 140.) Plaintiff Watkins is presently assigned to the SMU. Plaintiff Brown was subsequently transferred to the Georgia Diagnostic STEP Unit and has moved to be voluntarily dismissed from this action. (Doc. 202.)

The parties engaged in a lengthy discovery process. Plaintiffs obtained and reviewed many relevant records. In addition, Plaintiffs deposed the following Georgia Department of Corrections officials:

- Assistant Commissioner Timothy Ward;
- Assistant Commissioner Ricky Myrick;
- Former Field Operations Director Steve Upton;
- Former Facilities Director Rick Jacobs;
- Former Facilities Director Randy Tillman;
- Facilities Administrative Support Director Jack Koon;
- Deputy Director of Field Operations Ahmed Holt;
- Field Services Manager Otis Stanton;

- Former Georgia Diagnostic Warden Eric Sellers;
- SMU Superintendent Michael Cannon;
- Former SMU Deputy Warden William Powell;
- Former SMU Deputy Warden June Bishop;
- Former SMU Chief of Security Dwain Williams; and
- SMU counselor Karen Forts.

Plaintiffs also retained psychologist Dr. Craig Haney to visit the SMU, tour the facility, interview prisoners, review records, and prepare an expert report.

The parties engaged in settlement discussions over the course of approximately 18 months. In May 2017, after initial discovery and depositions of several senior Georgia Department of Corrections officials, Plaintiff Gumm sent a settlement offer to Defendants. In December 2017, Defendants made a counter-offer and the parties' counsel met in person to discuss their respective views on settlement. Plaintiff Gumm sent a formal response to Defendants' settlement proposal in February 2018. In May 2018, after Dr. Haney's report was completed and reviewed by Plaintiffs' counsel, Plaintiff Gumm sent a letter to Defendants' counsel requesting immediate changes in the SMU's conditions of confinement pending a final resolution of the case. The Court subsequently ordered a settlement conference (Doc. 149), at which the parties discussed the possibility of mutually agreeable terms for resolving the case and avoiding a preliminary injunction motion. The parties did not reach an agreement, and Plaintiffs filed a motion for preliminary injunction in July 2018. (Doc. 154.) In October 2018, the parties again discussed the possibility of resolving the case on mutually agreeable terms and had a third settlement conference, as well as numerous telephonic and written communications concerning

settlement. The negotiations were conducted at arm's length by parties and attorneys familiar with the evidence.

In December 2018, the parties reached an agreement to certify a settlement class and settle the declaratory and injunctive claims raised in this case. The settlement agreement, which is attached hereto as Exhibit A, requires the Defendants to take steps to remedy the alleged unconstitutional review procedures and conditions of confinement in the SMU that were the subject of the Plaintiffs' Third Amended Complaint. The parties are currently discussing modest incentive payments to Plaintiffs Gumm and Watkins for their service as class representatives. In addition, the parties are separately attempting to negotiate a settlement of Plaintiff Gumm's individual claims for damages. The parties will make legally required disclosures of any monetary settlement in this case.

## ARGUMENT

The parties request that the Court order: (a) preliminary certification of the settlement class and appointment of Plaintiffs' counsel as class counsel; (b) preliminary approval of the settlement agreement; (c) approval of a process for giving notice to the class; (d) scheduling of a final fairness hearing; and (e) following the final fairness hearing, final certification of the settlement class, final approval of the settlement agreement, and adoption of the settlement agreement by incorporation as the order of the Court.[1]

---

[1] *See Laube v. Campbell*, 333 F. Supp. 2d 1234, 1247-48 (M.D. Ala. 2004). The parties agree that the order entered by the district court in *Laube* would be an appropriate model for the order to be entered by this Court. The parties expressly stipulate that the prohibition on incorporation by reference in Federal Rule of Civil Procedure 65(d)(1)(C) is waivable and has been waived with respect to incorporation by reference of the settlement agreement in this case. *See Williams v. City of Dothan*, 818 F.2d 755, 761 (11th Cir. 1987); *United States v. McAndrew*, 480 F. Supp. 1189, 1192-93 (E.D. Va. 1979).

## I. PLAINTIFFS SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23.

The parties jointly request that the Court certify a settlement class under Federal Rule of Civil Procedure 23, with the class defined as follows: "All persons who are or in the future will be assigned to the facility currently known as the Special Management Unit at Georgia Diagnostic & Classification Prison, or who are or in the future will be assigned to the Tier III Program."

### A. Plaintiffs Satisfy the Requirements of Rule 23(a).

Federal Rule of Civil Procedure 23(a) permits a case to be maintained as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The settlement class here meets the requirements of Rule 23(a). The numerosity requirement is met because the Tier III Program currently houses over 100 inmates and will in the future house additional class members who are transferred to the SMU; joinder is therefore impracticable. (*See* Doc. 161-1 at 20-21.)

The commonality requirement is met because this case presents several dispositive questions of law and fact common to the class, including whether class members have a liberty interest in avoiding long-term confinement in the SMU, whether the procedures in place for reviewing class members' confinement in the SMU satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, and whether conditions of confinement in the SMU

violate the Eighth Amendment's prohibition on cruel and unusual punishment. (*See* Doc. 161-1 at 21-24.)

The typicality requirement is met because the legal claims of the class representatives are the same as those of other class members: they are or were confined in the same prison unit and subject to the same policies and practices regarding classification review and conditions of confinement. (*See* Doc. 161-1 at 25-26.)

Finally, the adequacy requirement is met because the class representatives have a strong interest in receiving meaningful classification review and avoiding harmful conditions of confinement for prisoners held in the SMU; there are no known conflicts of interest between the members of the proposed class; and Plaintiffs are presently represented by attorneys from the Southern Center for Human Rights (pursuant to the appointment of this Court) and from Kilpatrick, Townsend & Stockton, LLP, all of whom have experience litigating complex civil rights matters including prisoners' rights cases in federal court and have engaged in extensive discovery and pre-trial litigation in this case. (*See* Doc. 161-1 at 26-28.)

**B. Plaintiffs Satisfy the Requirements of Rule 23(b)(2).**

Federal Rule of Civil Procedure 23(b)(2) permits a case to be certified as a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate to the class as a whole."

The settlement class here meets the requirements of Rule 23(b)(2), which routinely applies to civil rights cases. (*See* Doc. 161-1 at 28-29.) Here, all class members are subject to Defendants' policies and practices regarding classification review and conditions of confinement

in the SMU. (*Id.*) Because these policies and practices apply generally to all class members, all class members will benefit from the relief afforded them by the settlement of this case.

The parties also refer the Court to the arguments and evidence put forward by Plaintiffs in support of their pending motion for class certification. (*See* Docs. 161 & 179.) For the purpose of certification of a settlement class, Defendants agree that class certification is appropriate for the reasons set forth above and by Plaintiffs in support of their motion.

### C. The Court Should Appoint Plaintiffs' Counsel as Class Counsel.

The parties request that undersigned counsel for Plaintiffs be appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g), given:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). As indicated in Plaintiffs' brief in support of their motion for class certification (Doc. 161-1 at 27-28), appointment of Plaintiffs' counsel as class counsel is appropriate.

## II. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT.

Under Rule 23(e), the claims of a proposed class "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). To approve a class settlement, a court must find "that it is fair, reasonable, and adequate" in light of the adequacy of the representation of the class, the manner in which the settlement was negotiated, the adequacy

of the relief provided to the class under the agreement, and the fairness of treatment of the class members relative to each other. Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). "Determining the fairness of the settlement is left to the sound discretion of the trial court." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class and Negotiated a Proposed Settlement at Arm's Length and With Sufficient Information to Reach an Effective Settlement.

Rule 23 requires the Court to consider whether "the class representatives and class counsel have adequately represented the class," Fed. R. Civ. P. 23(e)(2)(A), and whether "the proposal was negotiated at arm's length," Fed. R. Civ. P. 23(e)(2)(B). These requirements speak to "'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Comm.'s Note, 2018 amend. The focus should be "on the actual performance of counsel acting on behalf of the class," including whether class counsel "had an adequate information base" and whether negotiations "were conducted in a manner that would protect and further the class interests." *Id.*; *see Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.").

Here, the parties' settlement agreement is the product of arm's-length, adversarial negotiations between experienced and knowledgeable counsel who have prosecuted and defended this litigation for over two years. The agreement was approved by the class representatives based solely on what they perceived to be in the best interest of themselves and the absent class members. The process by which the settlement agreement was reached was

therefore fair to the class members and free of collusion between the parties. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (affirming approval of classwide settlement agreement where "the parties settled only after engaging in extensive arms-length negotiations"). In addition, the parties negotiated relief for the class separately from attorney's fees and Plaintiff Gumm's damages claims, thereby reducing the risk of a conflict between the interests of the class members and those of Plaintiffs and counsel.

Before settling the case, the parties completed a discovery process involving nearly two years of reviewing voluminous records; interviewing dozens of prisoners; deposing 14 prison officials, an expert, and Plaintiff Gumm; viewing conditions in the SMU firsthand; and consulting with an expert. The parties are well informed about the conditions in the SMU and how they affect the class members. Therefore, Plaintiffs and their counsel were well positioned to negotiate effective relief.

**B. The Relief Provided for the Class Is Fair and Adequate.**

The settlement agreement provides adequate substantive relief for the class members and treats class members equitably. *See* Fed. R. Civ. P. 23(e)(2)(C)–(D). Factors that must be considered in determining the substantive adequacy of relief include:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C) (effective Dec. 1, 2018). In addition to the factors enumerated above, decisions under previous versions of Rule 23 require courts to

consider "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *see also Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). The relevant factors are discussed below.

**1. Likelihood of success at trial, and associated costs and delay**

Plaintiffs claim that Defendants violated their rights under the United States Constitution by holding them in long-term solitary confinement without meaningful review. Plaintiffs and their counsel continue to believe that these claims are meritorious and that Plaintiffs would prevail if the case were to proceed to trial. *See, e.g.*, *Thomas v. Bryant*, 614 F.3d 1288, 1313 (11th Cir. 2010) (holding risk of psychological harm to prisoners may violate Eighth Amendment); *Sheley v. Dugger*, 833 F.2d 1429-30 (11th Cir. 1987) (same); *Hardwick v. Ault*, 447 F. Supp. 116, 125-27 (M.D. Ga. 1978) (same).

Defendants have raised many defenses to Plaintiffs claims (*see* Doc. 150 at 1-3) and have denied liability. Defendants' factual and legal defenses have not been tested. The parties agree that there is uncertainty about how the merits of Plaintiffs' claims would ultimately be resolved if the case proceeded to a trial on the merits.

A trial on the merits would entail substantial litigation costs and delay in the resolution of this case. Before a trial could occur, the parties and the Court would need to conduct an evidentiary hearing on Plaintiffs' motion for preliminary injunction, address any motions for summary judgment submitted by Plaintiffs and Defendants, and litigate

numerous pretrial matters including scheduling, sealing and unsealing of evidence, transportation for prisoner witnesses and parties to the trial, evidentiary matters, and stipulations. The cost of further litigation would be considerable in terms of time and funds expended.

**2. Range of possible recovery**

"In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall & Insulation Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007). Here, if Plaintiffs established Defendants' liability at trial, Defendants would be required to change certain conditions of confinement in the SMU to conform to the Eighth and Fourteenth Amendments. *See Brown v. Plata*, 563 U.S. 493, 510-11 (2011). In addition, the Prison Litigation Reform Act (PLRA) requires that relief be no more restrictive "than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A).

The parties' settlement agreement represents the parties' negotiated compromise between Plaintiffs' goal of remedying allegedly unconstitutional conditions of confinement and Defendants' goal of avoiding undue intrusion into prison operations. The parties agree that the prospective relief in the settlement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that the relief is narrowly drawn, extends no further than necessary to correct the alleged violations of the federal rights asserted by Plaintiffs in the Third Amended Complaint, and is the least intrusive means necessary to correct the violations of federal rights. In light of the PLRA's requirements, the settlement

agreement likely provides prospective relief similar to what the class would receive after trial, but without the attendant delay, expense, and risk of further litigation.

The terms of the settlement agreement compare favorably with settlements approved in other solitary confinement cases. Among other things, the settlement agreement requires that prisoners be transferred from the SMU after 24 months unless special circumstances exist, provides for four hours per day (Monday through Friday) of out-of-cell time, offers more programming time for SMU prisoners, and establishes protections for prisoners with mental illness. (Ex. A.) In other solitary confinement cases, the agreed upon relief has been similar. *See, e.g.*, Settlement Agreement ¶¶ 19, 21, 32 & Attach. A & B, *Ashker v. Governor*, No. 4:09-CV-5796 (N.D. Cal. Aug. 31, 2015) (modifying solitary confinement program to permit program completion within 24 months, 5-year cap on assignment, improved programming, 10 hours of yard per week, and up to 4 hours of group programs per week).

Given the uncertainties discussed in the preceding section, the parties submit that the proposed settlement is fair and well within the range of possible recovery at trial. *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1218 (11th Cir. 2012) ("If [defendant] prevails at trial, the class will be left with no remedy at all.").

**3. Complexity, expense, and duration of litigation**

As noted above, litigating this case would be expensive and time consuming. The parties anticipate that further litigation of this case would involve extensive adversarial proceedings and would require a substantial amount of time and effort by the parties as well as the Court. *Cf. Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1799808, at *3 (N.D. Ga. Apr. 15, 2015) (granting preliminary approval of settlement partly

because "the Parties w[ould] be highly motivated to aggressively litigate this case if a settlement was not approved"). The discovery in this case was extensive and a trial on the merits would entail presentation of a large volume of records. A trial would also include testimony from an expert based in California and a large number of prisoners who would need to be transported from multiple facilities across Georgia. Moreover, the delay entailed by further proceedings will harm prisoners currently held in the SMU. (*See, e.g.*, Doc. 142; Doc. 154-1 at 5-7.) Approval of the agreement will avoid the need for and expense of litigating similar claims in the future.

**4. Anticipated opposition to settlement**

"In determining whether to certify a settlement class, a court must also examine the degree of opposition to the settlement." *Columbus Drywall*, 258 F.R.D. at 560. Where "no notice has been provided to the class members, the Court cannot assess whether there are any objectors." *Id.* For that reason, the parties request that the Court address this issue after the notices have been sent to the members of the Class. *See id.* The parties anticipate no substantial or meritorious opposition to the settlement agreement.

**5. Effectiveness of proposed method of distributing relief**

Because the settlement agreement will apply to the SMU as a whole, the "method of distributing relief to the class" will effectively benefit every member of the class.

**6. Terms of attorney's fees award**

Rule 23 requires a district court to assess "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). There are no "rigid limits" on attorney's fees but "the relief actually delivered to the class can be a

significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23 Advisory Comm.'s Note, 2018 amend.

Here, the parties have agreed that counsel for the parties will confer in the 45 days following the Court's Order preliminary approving the settlement agreement in an effort to reach an agreement regarding the amount of the fee award. If the parties reach a resolution with respect to fees, Plaintiffs will submit an unopposed fee petition by no later than 15 days in advance of the fairness hearing in accordance with Federal Rule of Civil Procedure 23(h). In the event the parties are unable to resolve by agreement issues relating to Plaintiffs' claim for attorney fees, Plaintiffs may petition the Court by no later than 15 days in advance of the fairness hearing for a resolution thereof. Defendants opposition shall in any event be limited to their disagreement regarding the appropriate amount of fees.

The settlement agreement in this case provides substantial relief to the class members, and Plaintiffs are entitled to attorney's fees and costs under 42 U.S.C. § 1988 and other applicable laws. Because the parties have not yet determined the terms of a proposed award of attorney's fees, the parties request that the Court address attorney's fees at the final fairness hearing.

**7. Agreements made in connection with the proposed settlement**

Rule 23 requires the parties to file with the Court "a statement identifying any agreement made in connection with" a proposed class settlement. Fed. R. Civ. P. 23(e)(3). Here, the sole agreement made in connection with the proposed settlement is the agreement attached hereto as Exhibit A. The parties first negotiated and agreed to settle the injunctive claims. Plaintiffs' counsel later and separately began to negotiate a

monetary settlement for reasonable class-representative incentive payments (for Plaintiffs Gumm and Watkins) and an individual damages settlement (for Plaintiff Gumm), and those negotiations are ongoing. The parties will make legally required disclosures of any monetary settlement reached in this case.

### C. The Proposed Settlement Treats Class Members Equitably Relative to Each Other.

As will be further shown at the fairness hearing, the proposed settlement "treats class members equitably relative to each other," as is required by the revision to Federal Rule of Civil Procedure 23(e)(2)(D) effective December 1, 2018. This is an injunctive-relief-only class action settlement which provides for changes to policies and practices in the SMU. The provisions of the class action settlement apply equally to all class members housed in the SMU.[2]

### D. The Proposed Relief Meets the Requirements of 18 U.S.C. § 3626.

Prospective relief in this case must meet the requirements of 18 U.S.C. § 3626 in order to benefit the class members. The parties expressly stipulate and request that the Court find based upon that stipulation and upon its own independent review that the terms of the settlement agreement satisfy the need-narrowness-intrusiveness and public-safety / criminal-justice-impact requirements of the Prison Litigation Reform Act codified at 18 U.S.C. § 3626(a)(1)(A).[3] The

---

[2] The parties further represent that the individual damages claims of Mr. Gumm, one of the named plaintiffs, are being settled separately from and after agreement was reached on the class-wide non-monetary relief. Therefore, the settlement of his claims did not materially affect negotiations regarding resolution of the class claims.

[3] 18 U.S.C. § 3626(a)(1)(A) provides as follows: "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to

parties expressly stipulate and request that the Court find based upon that stipulation and upon its own independent review that the terms of the settlement agreement do not "require[] or permit[] a government official to exceed his or her authority under State or local law" within the meaning of 18 U.S.C. § 3626(a)(1)(B), and do not constitute a "prisoner release order" within the meaning of 18 U.S.C. § 3626(a)(3). The parties also expressly stipulate and request that the Court find based upon that stipulation and upon its own independent review that the Prison Litigation Reform Act's termination provision, 18 U.S.C. § 3626(b)(1)(A) (providing that prospective relief "shall be terminable upon the motion of any party or intervener . . . 2 years after the date the court granted or approved the prospective relief . . . ") is subject to waiver and has been waived by Defendants. *See Dunn v. Dunn*, 318 F.R.D. 652, 682 (M.D. Ala. 2016); *Depriest v. Walnut Grove Corr. Auth.*, 2015 WL 3795020, at *6 (S.D. Miss. June 10, 2015).

## III. THE PROPOSED METHOD OF NOTIFYING THE CLASS IS ADEQUATE.

The parties request that the Court approve the proposed notice to the class, attached hereto as Exhibit B, as it meets the requirements of Federal Rule of Civil Procedure 23(c)(2) and 23(e)(1). The notice and a copy of the settlement agreement will be delivered personally to each inmate currently incarcerated in the SMU, who will be asked to sign an acknowledgement of receipt. The notice will also be translated into Spanish and made available upon request.

---

any adverse impact on public safety or the operation of a criminal justice system caused by the relief." Although the Prison Litigation Reform Act generally requires courts to "engage in a specific, provision-by-provision examination of [prospective relief], measuring each requirement against the statutory criteria," *Cason v. Seckinger*, 231 F.3d 777, 785 (11th Cir. 2000), "[t]he parties are free," as they have here, "to make any concessions or enter into any stipulations they deem appropriate," and the court need not "conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute," *id.* at 785 n.8.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, SCHEDULE A FINAL FAIRNESS HEARING, AND, AFTER THE HEARING, GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT AGREEMENT.

Lastly, the parties request that the Court enter the proposed order of preliminary approval of the class action settlement, attached hereto as Exhibit C. Among other things, the proposed order sets forth the process by which members of the settlement class may communicate any comments or objections to the Court. It also states that the Court will hold a final fairness hearing to determine whether the proposed settlement of the claims in this case is fair, reasonable, and adequate and should finally be approved by the Court.

## CONCLUSION

The Court should (a) preliminarily certify the settlement class and appoint Plaintiffs' counsel as class counsel; (b) preliminarily approve the settlement agreement; (c) approve the proposed method of giving notice to the class; (d) schedule a final fairness hearing; and (e) following the fairness hearing, finally certify the settlement class, finally approve the settlement agreement, and adopt the settlement agreement by incorporation as the order of the Court.

Respectfully submitted,

/s/ Ryan Primerano
Sarah Geraghty
Ga. Bar No. 291393
Aaron Littman
Ga. Bar No. 843053
Ryan Primerano
Ga. Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
sgeraghty@schr.org

/s/ Elizabeth M. Crowder
Susan E. Teaster
Ga. Bar No. 701415
Elizabeth M. Crowder
Ga. Bar No. 100809
STATE DEPARTMENT OF LAW
40 Capitol Square, S.W.
Atlanta, Georgia 30334
(404) 463-8850
(404) 651-5304 (fax)
ecrowder@law.ga.gov

*Counsel for Defendants*

C. Allen Garrett Jr.
Ga. Bar No. 286335
James F. Bogan III
Ga. Bar No. 065220
Tamara Serwer Caldas
Ga. Bar. No. 617053
Chris W. Haaf
N.C. Bar No. 46077
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, Georgia 30309
(404) 815-6376
(404) 541-3498 (fax)
agarrett@kilpatricktownsend.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on December 21, 2018, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ Ryan Primerano