# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| TIMOTHY GUMM, | ) |
| | ) |
| ROBERT WATKINS, | ) |
| | ) |
|      Plaintiffs, | ) |
| | ) CIVIL ACTION |
|      v. | ) |
| | ) NO. 5:15-CV-41-MTT-CHW |
| BENJAMIN FORD, Warden, Georgia | ) |
| Diagnostic & Classification Prison, *et al.*, | ) |
| | ) |
|      Defendants. | ) |

<u>**SETTLEMENT AGREEMENT REGARDING**</u>
<u>**THE SPECIAL MANAGEMENT UNIT**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

TERMS AND CONDITIONS ............................................................................................4

I.      CONDITIONS OF CONFINEMENT IN THE SMU ......................................4

        A.      Out-of-Cell Time ....................................................................................4

        B.      Library, Book Carts, and GOAL Devices ............................................6

        C.      Programming ...........................................................................................6

        D.      Privileges .................................................................................................7

        E.      Food .........................................................................................................8

        F.      Other Conditions ....................................................................................8

II.     DURATION OF CONFINEMENT IN THE SMU ........................................9

III.    ASSIGNMENT AND PERIODIC REVIEW ...............................................11

IV.     MONITORING AND REPORTING REQUIREMENTS .............................14

        A.   Monitoring Meetings ................................................................................14

        B.   Access to Records and Data .....................................................................14

        C.   On-site Visits ...........................................................................................16

        D.   Access to Copies of This Agreement and Training of GDC Staff ...........17

V.      IMPLEMENTATION AND ENFORCEMENT ............................................17

        A.   Communications with and Responsibilities of Class Counsel ................17

        B.   Meet and Confer Obligations in the Event of an Alleged Breach ...........18

        C.   Enforcement .............................................................................................18

      D.  Class Certification, Notice, and Joint Motion ........................................................18

VI.    ATTORNEY FEES AND COSTS ...........................................................................19

VII.   CONSTRUCTION, EFFECT, AND TERM OF AGREEMENT ...............................21

      A.  Binding Effect ......................................................................................................21

      B.  Release ..................................................................................................................21

      C.  Severability ..........................................................................................................21

      D.  Modification .........................................................................................................22

      E.  Execution and Effective Date ...............................................................................22

      F.  Term of Agreement ...............................................................................................22

## SETTLEMENT AGREEMENT REGARDING
## THE SPECIAL MANAGEMENT UNIT

Plaintiffs Timothy Gumm and Robert Watkins, on behalf of themselves and all others similarly situated, and Defendants Timothy Ward, Ricky Myrick, Robert Toole, Benjamin Ford, Michael Cannon, and Joseph Polite (the Plaintiffs and Defendants, collectively, are referenced herein as "the Parties"), hereby enter this Settlement Agreement as a resolution of all claims for prospective relief asserted by Plaintiffs in this action.

### INTRODUCTION

1.　　　This is an action under 42 U.S.C. § 1983 challenging the conditions and procedures at the Special Management Unit ("SMU") at Georgia Diagnostic & Classification Prison ("Georgia Diagnostic").

2.　　　Plaintiffs in this action are Timothy Gumm and Robert Watkins, two men who are or were held in the SMU for at least seven years.  Watkins remains in the SMU.

3.　　　For purposes of this Agreement, Defendants are Timothy Ward in his official capacity as Interim Commissioner for the Georgia Department of Corrections ("GDC" or "the Department"); Ricky Myrick in his official capacity as the Department's Assistant Commissioner of the Facilities Division; Robert Toole in his official capacity as the Department's Director of Field Operations; Benjamin Ford in his official capacity as Warden of Georgia Diagnostic; Michael Cannon in his official capacity as Superintendent of the SMU; and Joseph Polite in his official capacity as Deputy Warden of the SMU.

4.　　　The Parties agree that this Court has jurisdiction to enter prospective relief against Defendants under 28 U.S.C. § 1331.  Venue is proper in this District under 28 U.S.C. § 1391(b).

5.　　　The Parties agree that Plaintiff Timothy Gumm faces a risk of being returned to the SMU and being subjected to the policies and practices challenged in this action absent

injunctive relief.  Robert Watkins is currently confined to the SMU and will continue to be subjected to the policies and practices challenged in this action absent injunctive relief.  Plaintiffs therefore have standing to seek prospective relief against Defendants concerning the conditions and review procedures applicable to the SMU.

6.      The Parties agree that Plaintiffs meet the requirements under Rule 23 of the Federal Rules of Civil Procedure to certify an injunctive class defined as follows: All persons who are or in the future will be assigned to the facility currently known as the Special Management Unit at Georgia Diagnostic & Classification Prison, or who are or in the future will be assigned to the Tier III Program.

7.      The Parties agree that the prospective relief set forth in this Agreement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that the relief is narrowly drawn, extends no further than necessary to correct the alleged violations of those federal rights as asserted by Plaintiffs in the Third Amended Complaint, and is the least intrusive means necessary to correct the violations of federal rights.  The relief set forth in this Agreement will not have an adverse impact on public safety or the operation of the criminal justice system, nor will it require or permit government officials to exceed their authority under state or local law, or otherwise violate state or local law.

8.      The prospective relief set forth in this Agreement shall be terminated only as provided herein and shall be exempt from the termination provisions of 18 U.S.C. § 3626(b) and Rule 60(b) of the Federal Rules of Civil Procedure.

9.      The terms of this Agreement apply to the SMU inmates assigned to the Tier III Program.[1]  The Tier III Program is an incentive program based on an increased level of privileges for demonstrated appropriate behavior and program compliance.  The goal is for the inmate to make the appropriate adjustments so that he or she may be returned to a general population housing assignment.  A person assigned to the Tier III Program is given the opportunity to progress through the program's phases based upon his or her behavior and ability to adjust under reduced levels of supervision.

10.     In recent months, the Defendants have taken numerous remedial measures, including the adoption of a revised Standard Operating Procedure related to the Tier III Program.  Plaintiffs appreciate the Defendants' efforts thus far aimed at improving conditions and processes related to the Tier III Program.  Resolving this matter with this Agreement is in the best interest of the Defendants and the members of the putative plaintiff class.

---

[1] During the pendency of this litigation the Department of Corrections reallocated the A-Wing within the SMU for alternative use.  Therefore, nothing contained within this Agreement is intended to include inmates housed in the A-Wing at the SMU.

3

## TERMS AND CONDITIONS

**I.     CONDITIONS OF CONFINEMENT IN THE SMU**

      **A.     Out-of-Cell Time**

11.     All inmates confined in the Tier III Program will be provided regular opportunities for outdoor and indoor out-of-cell time.  The purpose of outdoor out-of-cell time is to provide inmates with exercise and fresh air.  The purpose of indoor out-of-cell time is to provide opportunities for interpersonal communication and group activities while ensuring the security of inmates, officers, and staff members.

12.     All inmates will receive a minimum of four (4) hours out-of-cell time, per day, Monday through Friday, unless unanticipated security or safety considerations dictate otherwise, which shall be documented.  The four (4) hours out-of-cell time will encompass up to three (3) hours spent in a common area using restraint tables and one (1) hour of out-of-cell recreation time in the outdoor recreation cages, for a total of four (4) hours out-of-cell time per day.  An inmate's visitation time Monday through Friday may be included in the four (4) hours out-of-cell time, except that legal visitation shall not be included in the four (4) hours of out-of-cell time. Visitation time that occurs on the weekend shall not be used to reduce the Monday through Friday out-of-cell time.

13.     Out-of-cell time will be contemporaneously documented on the individual inmate's door sheet and thereafter in the institutional record of each individual inmate.   Time out and time back in the cell will be listed on the door sheet along with the name of the

documenting officer.  Out-of-cell time will also be broadly noted in a logbook maintained in the respective dormitory wings and/or control booths.

14.     If Defendants have reason to believe that out-of-cell time has been or will be cancelled or shortened from the time allotments listed in Paragraph 12 for three or more consecutive days, for either an individual dormitory or the entire SMU, the SMU Superintendent will promptly notify the Regional Director in writing and will explain the circumstances resulting in the cancellation, the steps taken to resolve the issue resulting in the cancellation, and an estimated timeline for resuming compliance with Paragraph 12.  The provision of written notice required in this Paragraph does not excuse the Defendants from their obligation to comply with the out-of-cell time requirements in Paragraph 12.

15.     Defendants will provide designated areas for indoor and outdoor out-of-cell time. The GDC is in the process of constructing additional outdoor recreation areas at the SMU.  After such construction is complete, inmates may conduct all or part of their out-of-cell time in the outside recreation pens, subject to security and staffing considerations.  This provision does not excuse Defendants from complying, as of the date of this Agreement, with the outdoor time required by Paragraph 12.

16.     Inmates will not be denied out-of-cell time as punishment except in cases in which the inmate has committed a "Great" or higher severity level disciplinary offense, *see* Ga. Dep't of Corr., Policy No. 209.01, Attach. 4 (Nov. 6, 2017), during out-of-cell time, or during transport to or from out-of-cell time.  In such cases, denial of out-of-cell time shall not exceed 14 consecutive days.  A mental health counselor will visit any inmate on yard restriction daily, excluding weekends and holidays, and the occurrence and substance of such visit will be documented in the inmate's mental health file.

17.     No inmate will be required to be restrained in a restraint table or to participate in outdoor out-of-cell time if he chooses to remain in his cell during out-of-cell time.  An inmate's refusal to participate in out-of-cell time will be contemporaneously documented on the individual inmate's door sheet and thereafter made a part of his institutional file.

18.     Defendants shall ensure that a sufficient number of administrators, correctional officers, counselors, mental health professionals, and other staff members are available to carry out the terms of this Agreement.

**B.     Library, Book Carts, and GOAL Devices**

19.     Inmates may be allowed access to materials from the main prison general-purpose library upon written request.  At least two mobile book carts will be available.  Inmates will have access to a book cart at least once per week.  Additional items will be added periodically. Defendants shall make reasonable efforts to solicit inmates' preferences for the materials added to the book carts.

20.     Inmates will be provided operable GOAL devices.  Inmates will be allowed to recharge the devices daily and access the kiosk at least twice per week.

21.     If an inmate's GOAL device is inoperable or inaccessible due to no fault of his own, the inmate shall have an opportunity to repair or replace the GOAL device consistent with the procedures applicable to the general population.

**C.     Programming**

22.     Within six months of the date of this Agreement, inmates will be provided the opportunity to participate in at least 120 minutes per week of out-of-cell programming or classes, which may include a GED program.  No inmate will be required to participate in programming.

Programming time and/or refusal to participate in programming will be contemporaneously documented on the individual inmate's door sheet.

23.     Defendants will notify prisoners of programming opportunities and schedules so that prisoners are aware of their ability to enroll in upcoming programs.

24.     Inmates will receive written acknowledgement of programs, classes, and similar activities completed while in the Tier III Program.  A certificate of completion shall be placed in the inmate's institutional file and a notation shall be made in the person's SCRIBE case notes promptly after the inmate has completed a program or class.

25.     If Defendants require inmates to complete certain programs or classes to qualify for transfer out of the SMU or Tier III: (a) no inmate shall be denied the opportunity to transfer if he is unable, due to disability or illness, to complete the required program or class; and (b) no inmate shall be denied the opportunity to transfer out of the SMU or Tier III for failure to complete the required program or class unless the inmate has received a reasonable opportunity to complete such program during his placement in the SMU or Tier III Program.

**D.     Privileges**

26.     Inmates will be accorded at a minimum the privileges set out in the privilege chart attached to SOP 209.09.

27.     All inmates in the Tier III Program shall have access to Chaplaincy Services. Religious materials are available upon request to the Chaplain, including approved religious texts, and books on a variety of subjects and services.  Volunteers from religious organizations may visit with inmates and conduct religious services for individuals or small groups of Tier III inmates at the discretion of the Superintendent.

7

### E.    Food

28.    The food provided to persons in the Tier III Program shall be of the same quality and quantity as that provided to people in the general population.

29.    Inmates held in the SMU will be permitted to receive special or substitute meals on the same basis as inmates in the general population and/or as ordered by a medical provider.

30.    Defendants shall remove any sign posted anywhere in the SMU that discourages inmates from discussing their nutritional needs with medical staff members.

### F.    Other Conditions

31.    Defendants shall maintain the highest possible standards of cleanliness, sanitation, and safety in the SMU.

32.    All cells are single occupancy.

33.    Cells must be equipped and furnished in a manner consistent with cells in the general population.

34.    Each inmate must be provided prescribed medication, clothing, and access to basic personal items for use in their cells as set out in the privilege chart attached to SOP 209.09 unless there is imminent danger that an inmate will destroy an item or induce self-injury.

35.    Inmates shall be provided toiletries and personal hygiene items—including toilet paper, soap, toothbrushes, toothpaste, and similar items—on the same basis as inmates in the general population.

36.    Inmates shall be provided the opportunity to clean their cells on the same basis as inmates in the general population.

37.    Each inmate must be provided the opportunity for a shower and shave three (3) times per week.

8

38.     Inmates must be provided the same laundry and barbering services and are issued and exchanged clothing on the same basis as inmates in general population.  Exceptions are permitted only when found necessary by the Superintendent or designee; any exception is recorded in the unit log and justified in writing.

39.     Inmates shall receive the services of a counselor.

40.     The sliding covers attached to cell-door windows shall remain open at all times, unless articulable security or safety considerations dictate otherwise.  In no case will the sliding cover on a particular inmate's cell-door window remain closed once the particular security or safety consideration has been resolved. The closure of the cell-door windows will be broadly noted in a logbook maintained in the respective dormitory wings and/or control booths.

41.     No inmate shall be held in a cell lacking an exterior window unless the inmate has damaged the exterior window in his assigned cell.

42.     Inmates shall have operable electric lights in their cells.  Defendants shall promptly repair broken or inoperable electric light fixtures in cells, or promptly move the affected inmate to a cell with an operable light fixture.

43.     Inmates shall not be placed in cells that are constantly lit.  Cell lights shall be turned off during time periods designated for sleeping unless otherwise requested by an inmate or deemed necessary for the safety and security of an inmate.

## II.     DURATION OF CONFINEMENT IN THE SMU

44.     Inmates will not be held in the SMU or Tier III Program for more than 24 months unless they voluntarily request to be placed and remain there or meet one or more of the following six criteria: (1) the inmate committed a murder while incarcerated; (2) the inmate escaped outside the secure fencing of a GDC facility; (3) the inmate caused serious bodily injury

to another inmate or a GDC employee, contractor, or volunteer; (4) the inmate took another inmate or GDC employee, contractor, or volunteer hostage; (5) the inmate's crime was so egregious that the person was placed in the Tier III Program immediately upon being placed in GDC custody; or (6) the inmate, due to his unique position of influence and authority over others, poses such an exceptional, credible, and articulable risk to the safe operation of the prison system or to the public that no facility other than the Tier III Program facility is sufficient to contain the risk.

45.     Inmates held in the SMU or Tier III Program beyond 24 months will be reviewed quarterly by a panel composed of the Director of Field Operations, the Statewide Mental Health Director, the Statewide Medical Director, and a member of the Office of Legal Services.  In the event that a panel member is unavailable due to illness, family emergency, or other exigent circumstance to participate in the quarterly review, the panel member may select a designee in the senior management of his or her particular department to participate in the review.  The Defendants will rely on specific criteria to govern the panel's determination of whether a person should remain in the SMU or Tier III Program beyond 24 months, and the Commissioner or Assistant Commissioner must personally approve any decision by the panel to retain an inmate in the SMU or Tier III Program beyond 24 months.  The criteria governing the panel's determination shall include: (a) length of time in current phase; (b) perceived risk of release from the SMU; (c) number, type, and frequency of disciplinary reports; (d) involvement in self-improvement activities; (e) behavior while in the SMU; (f) the person's 60-day or 90-day mental health evaluation; (g) progress on the person's Offender Management Plan; and (h) the total duration of the person's confinement in the SMU.

46.     If the inmate is within 12-months or 6-months of his maximum release date (MRD), then the Classification Committee shall consider the inmate for placement in the Tier III STEP Program.  If the inmate is denied placement in the Tier III STEP Program, then the Classification Committee shall document the specific and individualized reasons for the denial on Attachment 4 of SOP 209.09.  If such an inmate is denied placement in the Tier III STEP Program and appeals the Classification Committee decision, then the Assistant Commissioner will personally review the denial of such placement and document his decision and reasons in the inmate's institutional file.

## III.     ASSIGNMENT AND PERIODIC REVIEW

47.     The criteria for assignment to the SMU or Tier III Program shall be modified to eliminate the provision that allows any inmate to be assigned to the SMU if he is deemed "a threat to the safe and secure operation of the Facility."  Defendants may, however, assign an inmate to the SMU/Tier III if he participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of GDC facilities, or protection of the public.

48.     Prior to assignment to the SMU or Tier III Program, a formal hearing will be convened to advise the person that he is being assigned to the SMU/Tier III.  The inmate must be given an opportunity to be present at this hearing, and must be afforded the following rights in connection with SMU/Tier III assignment or proposed assignment:

a)     At least 48 hours prior to the hearing, the inmate must be served with a notice informing the inmate that he is being considered for the SMU/Tier III Program.

b)  The inmate has the right to attend the hearing.  He may forfeit this right if he is disruptive, and this disruption shall be documented.  Should he decline to attend, his waiver of the right to attend shall be documented.

c)  The inmate has the right to make a verbal statement, to present documents, and to submit a written statement.

d)  The inmate will be informed that he may submit written objections to a recommendation that he be moved to the SMU/Tier III Program.  He may do so using an appeal form to be submitted to the Director of Field Operations within 14 calendar days from receipt of the notice of assignment to the SMU.  If the Director of Field Operations approves the recommendation, then the inmate's written objections shall be forwarded to the Assistant Commissioner of Facilities who shall make the final decision about SMU placement.

e)  Except in emergency situations, transfer of the inmate to the SMU must not be made until after the time for the inmate to submit objections expires.

49.  Before assignment to the SMU, and in conjunction with every 60-day or 90-day review hearing, inmates will receive an out-of-cell mental health evaluation performed by a licensed mental health provider who shall be a psychiatrist, a psychologist, or a certified nurse practitioner to determine whether the inmate is, by reason of mental illness or disability, precluded from being placed in or remaining in the Tier III program.  An inmate is precluded from being placed in or remaining in the Tier III Program if the inmate cannot, by reason of mental illness or disability, comply with the facility's rules or complete the Tier III program.

Inmates with a mental health designation of Level III or above will not be housed in the Tier III Program.

50.     If in the course of any evaluation the mental health provider determines that an inmate is decompensating or is reasonably likely to decompensate in the SMU environment, or that the inmate is, by reason of mental illness or disability, precluded from continued placement in the Tier III program, Defendants will, on an expedited basis, transfer the inmate to an appropriate treatment facility as determined by GDC officials.

51.     For every evaluation, the licensed mental health provider shall document in writing his/her observations, findings and recommendations with respect to the inmate evaluated. The provider shall also log the date of the evaluation.

52.     Defendants will ensure that all SMU officers and staff members are trained in recognizing and responding to signs and symptoms of mental illness, including suicidal ideation and acts.

53.     Upon assignment to the SMU or Tier III Program, each inmate will be provided a detailed Offender Management Plan setting out individualized goals for the inmate and explaining the steps that the inmate must take to qualify for a transfer from the SMU/Tier III Program.  Each inmate will also be provided with a description of the periodic review process that determines if the person progresses to the next phase and a review of the steps required to be completed to exit the Tier III Program.

54.     The SMU's periodic review procedures will involve a multi-level process beginning with review by a classification committee and ending with review by an assistant commissioner, as required by SOP Policy No. 209.09 at 12-16.    Specific and detailed reasons will be provided in writing for placing an inmate in the SMU/Tier III and retaining him there.  At

every stage, including the appeal stage, the inmate will be informed in writing of the result of the review.

55.     No inmate will be required to return to E-Wing (Phase 1) or F-Wing (Phase 2) unless he is found to have engaged in conduct that would satisfy one of the criteria for assignment to the SMU.  Where feasible, inmates must be provided an interim hearing with the classification review committee before being returned to E-Wing (Phase 1).

56.     Inmates transferred from the SMU will be placed in either a Segregation Transition Education Program (STEP) or Specialized Mental Health Treatment Unit (SMHTU).

## IV.    MONITORING AND REPORTING REQUIREMENTS

### A.    Monitoring Meetings

57.     The Parties will have regular, in-person meetings to discuss the Defendants' compliance with this Agreement.  Meeting participants will include at a minimum the following: one or more Plaintiffs' counsel, one or more persons in GDC senior management with knowledge of current conditions at the SMU/Tier III Program, and one or more representatives of the Attorney General's office.  The meetings will take place on at least four occasions (approximately once every 9 months) during the three-year Agreement term, the first one to take place in January 2019.  The first meeting may take place by conference call.  The Parties will work in good faith to schedule the meetings at a mutually convenient time and location. Plaintiffs will circulate a proposed agenda for each meeting within seven calendar days before each meeting.

### B.    Access to Records and Data

58.     Within 15 days after this Agreement is entered, the Parties will present to the Court a joint motion for a protective order to govern the release of confidential and/or HIPAA-

14

protected information to Plaintiffs' counsel.  Assuming that the Court enters a protective order, the Defendants will provide Plaintiffs' counsel with documents and data as set forth in this Agreement.  Should the Court decline to enter a protective order, Plaintiffs will be required to provide the Defendants with HIPAA-compliant releases before the release of any class member's protected health information.

59.     The Defendants will provide the following documents to Plaintiffs' counsel once per month for the term of the Agreement, to begin the first week of January 2019: (a) a roster of all current SMU inmates, to include name, current wing/phase assignment, race, and mental health level for each inmate then housed in the SMU; (b) all notices or other documents regarding failures to provide out-of-cell time, including written communications between the Superintendent and the Regional Director, as described in Paragraph 14.

60.     The Defendants will provide the following documents to Plaintiffs' counsel in electronic format at least 14 days in advance of each monitoring meeting:

   a)     Portions of the institutional, medical, and mental health files, subject to the Court's protective order, for up to 20 inmates (per round of document production), to be selected by Plaintiffs' counsel, specifically:

      1.   SCRIBE-generated case notes, grievances, disciplinary reports, and mental health summaries;

      2.   The mental-health portion of the inmates' files; and

      3.   The complete portions of the inmates' institutional records reflecting assignment and confinement in the SMU (including completed Attachments 1-5, 7 & 9 of SOP 209.09, for each such person).

15

b)      An Excel spreadsheet containing a SCRIBE summary of all incident

reports documenting occurrences, events, or incidents in the SMU for the

preceding 9-month period.

c)      Logbooks for each of the five wings for the preceding 9-month period.

d)      ACU/CSU logs pertaining to SMU/Tier III prisoners for the preceding 9-

month period.

e)      Amendments, modifications, or draft modifications to SMU or Tier III

standard or local operating procedures (if any) since the last meeting.

f)      Documentation showing classes offered at the SMU or in the Tier III

Program during the preceding 9-month period, and the identities of

inmates who participated in and completed each class.

**C.      On-site Visits**

61.      Plaintiffs' counsel shall visit the SMU on three occasions, spaced roughly one

year apart, during the period of the Agreement.  Each visit will occur on a single weekday,

between the hours of 9:00 a.m. and 5:00 p.m.  SCHR will give Defendants no less than 7

business days advance notice of each visit.  Defendants will allow Plaintiffs' counsel to visit

areas of the SMU to which inmates have routine access. During the course of the on-site visits,

should an inmate express a desire to speak with a representative from SCHR, a representative

from SCHR will be permitted to approach the cell of that inmate for the limited purpose of

obtaining the name and GDC ID number of the inmate and to advise the inmate that they are

there for an on-site visit and that they will return in the near future for an attorney-client meeting.

To minimize the disruption to the daily operations of GDC, any and all cell-front communication

shall be limited to 30 minutes per wing.  Additionally, counsel will be permitted to observe the

common areas where inmate activities occur.  Plaintiffs' counsel will be escorted by GDC

officials during each of the on-site visits.  Plaintiffs' counsel may be accompanied on each visit

by Dr. Craig Haney or another credentialed expert.

       **D.**    **Access to Copies of This Agreement and Training of GDC Staff**

      62.    Inmates entering the SMU or any Tier III Program shall be provided an

information sheet, mutually approved by all Parties, informing them of the material terms of this

Agreement.  A copy of the Agreement shall be provided to any inmate who requests it.  In

addition, copies of the Agreement shall be provided to all inmates in the SMU at the time that

class notice is accomplished.  All GDC employees who are involved in the daily operation of the

Tier III program will be trained on the SOP and any provisions contained herein that apply to the

daily management of inmates housed in the Tier III program.

**V.**    **IMPLEMENTATION AND ENFORCEMENT**

       **A.**    **Communications with and Responsibilities of Class Counsel**

      63.    Plaintiffs' counsel shall be entitled to meet with and speak confidentially with all

inmates covered by this Agreement.  Institutional staff shall facilitate Plaintiffs' counsel's

requests for reasonable access to such individuals without undue delay.  Plaintiffs' counsel and

their paralegals shall be permitted contact visits with inmates in the SMU, unless individualized

security concerns dictate otherwise.

      64.    Any complaints or concerns by any plaintiff class member relating to this

Agreement, or to the injunctive relief claims in the Third Amended Complaint in this matter,

shall be referred to class counsel who shall determine whether enforcement action is warranted

pursuant to Paragraphs 65-66.  The enforcement provisions of Paragraph 66 are exclusive and

only class counsel may seek enforcement of any of the terms and conditions of this Agreement.

Except for motions by class counsel pursuant to Paragraph 66, no person, including any member of the class, may be heard upon any contempt motion for alleged non-compliance with this Agreement or bring any separate action or proceeding to enforce this Agreement.

**B.    Meet and Confer Obligations in the Event of an Alleged Breach**

65.    If Plaintiffs believe that Defendants have committed or are committing a breach of this Agreement, Plaintiffs' counsel will provide Defendants with a written notice describing the alleged breach.  Defendants will provide a written statement responding to the notice within fifteen (15) calendar days from receipt of the notice and, within fifteen (15) calendar days of receipt of Defendants' written response, counsel for the Parties shall confer in a good faith effort to resolve their dispute.  The Plaintiffs will not file an enforcement motion as permitted in Paragraph 66 without first having provided the Defendants with a notice of alleged breach.

**C.    Enforcement**

66.    Plaintiffs may request enforcement of the Agreement by seeking an order requiring the Defendants to show cause why they should not be held in contempt, or by seeking an order for other relief upon noticed motion before the Court.  Any such show cause motion will cite the provision(s) at issue and allege that the Defendants have breached said provision(s).

**D.    Class Certification, Notice, and Joint Motion**

67.    The Parties agree that Plaintiffs meet the requirements under Rule 23 of the Federal Rules of Civil Procedure to certify an injunctive class defined as follows: All persons who are or in the future will be assigned to the facility currently known as the Special Management Unit at

Georgia Diagnostic & Classification Prison, or who are or in the future will be assigned to the Tier III Program.

68.     By joint motion to be filed no later than December 21, 2018, the Parties will request that the Court preliminarily approve this Agreement, conditionally certify a class for settlement under Rule 23(b)(2), require that individualized notice of the proposed settlement be sent to class members, provide for an objection period, and schedule a fairness hearing.

69.     Prior to or concurrent with the joint motion for preliminary approval, the Parties will jointly request that the Court stay all other proceedings in this case pending resolution of the fairness hearing.  Following the close of the objection period, the Parties will jointly request that the Court enter a final order approving this Agreement and entering it as an order of the Court, retaining jurisdiction to enforce it, and continuing the stay of the case pending the completion of the Agreement's terms.

70.     If this Agreement is not approved by the Court, the Parties shall be restored to their respective positions in the action as of the date on which this Agreement was executed by the Parties, the terms and provisions of this Agreement shall have no force and effect, and shall not be used in this action or in any proceeding for any purpose, and the litigation of this action shall resume as if there had been no settlement.

## VI.     ATTORNEY FEES AND COSTS

71.     The Parties agree that 42 U.S.C. §§ 1988 and 1997(e) govern the award of attorneys' fees in this case, and that Plaintiffs are entitled to an award of fees—covering the work of counsel through the date of the Court's Order finally approving and adopting this Agreement—under these provisions.  The Parties have, at the request of Plaintiffs' attorneys,

postponed discussion of the amount of such fees until after the class claims for injunctive relief have been finally resolved.

72.     Counsel for the Parties will confer in the 45 days following the Court's Order preliminarily approving the Agreement in an effort to reach an agreement regarding the amount of the fee award.  If the Parties reach resolution with respect to fees, Plaintiffs will submit an unopposed fee petition by no later than 15 days in advance of the fairness hearing in accordance with Federal Rule of Civil Procedure 23(h). In the event the Parties are unable to resolve by agreement issues relating to Plaintiffs' claim for attorneys' fees, Plaintiffs may petition the Court by no later than 15 days in advance of the fairness hearing for a resolution thereof.  Defendants' opposition shall in any event be limited to their disagreement regarding the appropriate amount of fees.

73.     The Parties agree that Defendants shall reimburse Plaintiffs for attorneys' fees at a rate of $200 per hour for attorney work and $75 per hour for paralegal work performed following the Court's final approval and adoption of this Agreement, in monitoring compliance with and, if necessary, enforcing it.  The Parties agree that Plaintiffs shall waive any request for reimbursement of fees for the first 200 hours reasonably expended by counsel or their paralegals during each calendar year. Such fees shall be payable within 30 days of receipt by Defendants of invoices containing proper accounting of hours expended and tasks performed, unless, within 30 days, Defendants petition this Court for relief based upon a showing that some portion of the hours billed were not reasonably expended.

74.     The initial notice to the class members shall explain that Plaintiffs will attempt to reach an agreement with Defendants regarding retrospective attorneys' fees and will file a motion for such fees no later than 15 days in advance of the fairness hearing, at which time additional

notice of the motion will be provided to class members.  The initial notice will also indicate that the Parties have agreed to the prospective award of attorneys' fees as detailed above.

## VII.   CONSTRUCTION, EFFECT, AND TERM OF AGREEMENT

### A.   Binding Effect

75.   This Agreement is binding upon Plaintiffs and the class, the Defendants named in this lawsuit in their official capacities, and on Defendants' successors in office, employees and agents.

### B.   Release

76.   All claims for declaratory and injunctive relief asserted in the Third Amended Complaint shall be finally and fully settled and released, subject to the terms and conditions of this Agreement, which the Parties enter into freely, voluntarily, knowingly, and with the advice of counsel.  The named Plaintiffs and unnamed class members hereby release the Defendants in their official capacities from, and are barred and precluded from prosecuting any claims, causes of action or requests for any injunctive or declaratory relief that have been asserted in this litigation, provided that in no event shall this release be deemed to release or otherwise affect in any way: (a) any claim for money damages; (b) any claim related to medical or mental health diagnosis or treatment; or (c) any claim regarding any act, incident, or event that occurs after the expiration of the Agreement.

### C.   Severability

77.   The obligations governed by this Agreement are severable.  If for any reason a part of this Agreement is determined to be invalid or unenforceable, the presumption will be that such a determination shall not affect the remainder.

**D.**     **Modification**

78.     The Parties may jointly stipulate to make changes, modifications, and amendments to the requirements of this Agreement.

**E.**     **Execution and Effective Date**

79.     This Agreement may be executed in multiple counterparts and emailed or faxed signatures will be valid and enforceable.  This Agreement shall be effective upon the approval of this Agreement by the Court and entry of this Agreement as an order of the Court.

**F.**     **Term of Agreement**

80.     Unless otherwise agreed by the Parties with approval of the Court, this Agreement and the Court's order approving and entering it shall terminate three years from the Effective Date.

**REVIEWED AND AGREED TO BY:**

FOR PLAINTIFFS:

/s/ Sarah Geraghty
Sarah Geraghty
Ga. Bar No. 291393
Aaron Littman
Ga. Bar No. 843053
Ryan Primerano
Ga. Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
sgeraghty@schr.org

C. Allen Garrett Jr.
Ga. Bar No. 286335
James F. Bogan III
Ga. Bar No. 065220
Tamara Serwer Caldas
Ga. Bar. No. 617053
Chris W. Haaf
N.C. Bar No. 46077
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
(404) 815-6376
(404) 541-3498 (fax)
agarrett@kilpatricktownsend.com

*Counsel for Plaintiffs*

Dated: December 21, 2018

FOR DEFENDANTS:

/s/ Elizabeth M. Crowder
Susan E. Teaster
Ga. Bar No. 701415
Elizabeth M. Crowder
Ga. Bar No. 100809
STATE DEPARTMENT OF LAW
40 Capitol Square, S.W.
Atlanta, Georgia 30334
(404) 463-8850
(404) 651-5304 (fax)
ecrowder@law.ga.gov

*Counsel for Defendants*