# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| TIMOTHY GUMM, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:15-cv-41 (MTT) |
| | ) |
| RICK JACOBS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Jeffrey Bourassa moves to intervene as of right or, in the alternative, permissively. For the following reasons, that motion (Doc. 228) is **DENIED**.

### I. BACKGROUND

Bourassa states that in April 2016 he was placed in the Tier III Program in the Special Management Unit ("SMU") at the Georgia Diagnostic & Classification Prison ("GDCP"). *Id.* at 1. He was transferred out of Tier III and to a different prison in June 2016, and he was returned to the GDCP Tier III on March 6, 2018. *Id.* at 2, 5. On March 14, 2018, he was transferred to federal custody to await trial on a RICO charge. *Id.* at 4-5. He notes that although he "is a class member in that he is currently assigned to GDCP/SMU/Tier III" and claims he will be returning there, he has not been provided notice of the proposed Settlement Agreement. *Id.* at 6. Movant Bourassa therefore "objects to any proposed settlement agreement unless and until he is both served with proper notice" and a copy of the Settlement Agreement "and has an opportunity to be heard in response to said Settlement Agreement." *Id.* at 7. However, Bourassa also admits that he "has since obtained access to the proposed Settlement Agreement." *Id.*

The Court also notes that it has certified a class of "all persons who are or in the future will be assigned to the facility currently known as the Special Management Unit at Georgia Diagnostic & Classification Prison, or who are or in the future will be assigned to the Tier III Program."  Doc. 256 at 28.  Bourassa, who has been in federal custody for over a year but could conceivably return to the SMU, is a potential future class member.  Doc. 248 at 6.  Depending on the outcome of his federal trial, he may or may not return to the Georgia Diagnostic & Classification Prison; if he does return, he may or may not be assigned to Tier III.  Doc. 252 at 14-15.  Despite that attenuated and uncertain connection to the Tier III program, class counsel treat him as a class member for the purposes of this motion.  Doc. 252 at 6.

## II. DISCUSSION

Rule 24(a) of the Federal Rules of Civil Procedure allows, in certain situations, for intervention as of right, and Rule 24(b) allows for permissive intervention in the Court's discretion.  Both Rule 24(a) and Rule 24(b) require that a motion to intervene be "timely," so the Court addresses timeliness first.  *See NAACP v. New York*, 413 U.S. 345, 365 (1973).

### A. Timeliness

"A district court must consider four factors in assessing timeliness, namely (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that

the application is timely." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983).

As to the first factor, it is unclear when Bourassa knew or should have known of his interest in the case. He claims that he spent approximately two months in the SMU in April 2016 to June 2016 and approximately a week in the SMU in March 2018. Doc. 228 at 1-5. He claims he first learned of this case on February 26, 2019, and there is no indication that he should have known of his interest in the litigation before then. Doc. 228 at 9. He moved to intervene relatively promptly: the Court received his motion to intervene on March 25, 2019. Doc. 228 at 1. The first factor, therefore, supports a finding of timeliness. As to the second factor, Bourassa moved to intervene not long after learning of his interest in the litigation, so the existing parties would not be prejudiced by any delay in Bourassa's moving to intervene. As to the third factor, there is minimal prejudice to Bourassa if his motion is denied, because he was able to file objections, which were fully considered by the Court. Docs. 227, 256 at 22-23. Also, as discussed in more detail below, the representative plaintiffs have an interest identical to Bourassa's, and so he will not be prejudiced if his motion is denied. *See Jefferson Cty.*, 720 F.2d at 1517 (noting that courts will "find no prejudice sufficient to give weight to the third factor" when a putative intervenor has interests identical to those of a party). As to the fourth factor, there are no unusual circumstances concerning the timing of Bourassa's motion. Considering all the circumstances, Bourassa's motion is timely.

**B. Intervention as of Right**

Rule 24(a)(1) allows intervention when the putative intervenor is "given an unconditional right to intervene by a federal statute," but Bourassa has not pointed to any statute conferring an unconditional right to intervene in this case. Rule 24(a)(2) allows intervention as of right when the putative intervenor "claims an interest relating to

the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

To intervene as of right, therefore, a movant must satisfy four requirements: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). As discussed above, Bourassa's motion is timely. Further, although Bourassa's connection to Tier III is attenuated and uncertain, the Court will assume, for the purposes of resolving this motion, that he satisfies the second and third requirements.[1]

However, Bourassa cannot satisfy the fourth requirement for intervention as of right: demonstrating that his interest—that is, his speculation that he may return to Tier III—is inadequately represented by the existing parties. *See Purcell*, 85 F.3d at 1512. Generally, the intervenor will satisfy this requirement "unless it is clear that [the current parties] will provide adequate representation." *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). Although the movant's burden to demonstrate inadequacy is "not onerous," the movant still "must produce something more than speculation as to the purported inadequacy." *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) (quotation marks omitted) (citing *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979); *Dimond v. Dist. of Columbia,* 792 F.2d 179, 192 (D.C.Cir.1986)). On the other hand, "[w]hen the party seeking intervention has the

---

[1] That assumption is generous to a fault. Potential future class members include virtually any male, whether currently incarcerated or not, who could transgress in a way that could lead him to Tier III.

same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978).[2]

Bourassa argues that class representation is inadequate because class counsel are sacrificing his speculative interests to further the interests of other class members. Specifically, he objects to Paragraph 44 of the Settlement Agreement, which allows the Defendants to keep an inmate in Tier III for longer than two years if, among other conditions, "(5) the inmate's crime was so egregious that the person was placed in the Tier III Program immediately upon being placed in GDC custody; or (6) the inmate, due to his unique position of influence and authority over others, poses such an exceptional, credible, and articulable risk to the safe operation of the prison system or to the public that no facility other than the Tier III Program facility is sufficient to contain the risk." Docs. 256-1; 248 at 9. Bourassa, however, does not provide any allegations indicating why those provisions would disadvantage him relative to the representative plaintiffs or the class as a whole.

In fact, Bourassa's own allegations undermine any claim that his interests in limitations on long-term confinement are any stronger than the interests of other class members. It does not appear Bourassa was transferred to the SMU Tier III until April 2016, after he had already been incarcerated at Georgia State Prison. Doc. 228 at 1. Accordingly, category (5) of Paragraph 44 does not apply to him.

As to category (6), Bourassa gives no reason why he is any more likely than other prisoners to be placed in that category. In fact, his allegations indicate he was

---

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

assigned to the SMU for approximately two months in 2016, after which time he was transferred to Tier II at Hays State Prison. Doc. 228 at 2. He was again placed in Tier III for a period of eight days in March 2018, before he was transferred to federal pre-trial custody. *Id.* at 4-5. He makes no allegation he was considered especially dangerous to other inmates or to the public, or that he has influence or authority over others. Bourassa, therefore, has not indicated he is any more likely than the named Plaintiffs or any other member of the class to be burdened by Paragraph 44. Again, based on his prior classifications, he is, if anything, *less* likely than other class members to be placed in category (6) by GDC officials, as he has not, in the past, even been placed in Tier III for any extended period of time. It is additionally uncertain (1) whether he will be returning to GDC custody at all, (2) if so, whether he would be placed in Tier III, and (3) if he were placed in Tier III, whether he would be held for more than 24 months. Accordingly, although the Court carefully considers his argument that his interests are inadequately represented, that argument is ultimately conclusory and is undermined by the facts which he alleges.

The representative Plaintiffs have adequate incentive to pursue a settlement which limits long-term confinement in the SMU. According to class counsel, Plaintiff Gumm was in the SMU for seven years. Doc. 252 at 7. Plaintiff Watkins was assigned to the SMU on July 27, 2009 and has remained there ever since. Docs. 140 ¶¶ 47, 50. And the representative Plaintiffs have, in fact, negotiated favorable settlement terms which limit long-term confinement. Class counsel explained the process behind the negotiation of the Agreement's 24-month cap, with limited exceptions for security:

> In light of the law that we have, Plaintiffs assessment is that we have done—we have made the best—after a period of considered judgment on this issue and a protracted back-and-forth negotiation, we arrived at a settlement Agreement that adds significant procedural protections to the process by which people are evaluated for how long they stay in the SMU.

Doc. 252 at 7-8. The procedural protections provide inmates assigned to the SMU for longer than 24 months "quarterly review by a panel composed of the Director of Field Operations, the Statewide Mental Health Director, the Statewide Medical Director, and a member of the Office of Legal Services." Doc. 256-1 ¶ 45. That represents an excellent outcome for the class, and there is no indication that the class counsel could have advocated more vigorously or achieved a better outcome regarding long-term confinement.[3] Bourassa also makes a conclusory argument that he could obtain a better result by going to trial. Doc. 248 at 10. But he does not provide any arguments or authority supporting that claim, and the Court believes that class counsel is better able to evaluate the relative advantages and disadvantages of settling or going to trial, and to make litigation decisions on the basis of that evaluation, than Bourassa. *See* 3 Newberg on Class Actions, § 9:35 (5th ed.) ("Ordinarily . . . a mere difference in preferred litigation tactics or strategy will be insufficient to show inadequate representation") (citing *Jenkins by Jenkins v. State of Mo.*, 78 F.3d 1270, 1275 (8th Cir. 1996)). The Court additionally believes, based on its own independent review, that the Settlement Agreement is a fair, adequate, and reasonable outcome for the class members. *See* Docs. 210; 256.

---

[3] The Court further notes that an absolute 24-month cap of the sort Bourassa advocates would prevent the Defendants from confining certain inmates in the SMU no matter the security risk posed. In practice, that would require the Defendants to either create a new housing unit with a security level equal to that of the SMU to house high-security inmates or to place them in lower-security housing and risk compromising prison security. The former would be of dubious benefit to the class members, and the Defendants likely would not have agreed to the latter. And any relief which compromises security would potentially raise issues under 18 U.S.C. § 3626(a), which prevents the Court from approving the relief provided by the Settlement Agreement unless the Court finds such relief "is the least intrusive means necessary to correct the violation of the Federal right" and requires the Court, in making that inquiry, to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626.

In short, the representative Plaintiffs have the "same ultimate objective" as Bourassa regarding conditions of confinement in Tier III, and they have at least as strong an interest as Bourassa in pursuing limitations on long-term confinement in Tier III. *Int'l Tank Terminals*, 579 F.2d at 967. Accordingly, "a presumption arises that [Bourassa's] interests are adequately represented." *Id*. The Settlement Agreement, which provides favorable relief for the class, including limitations on long-term confinement in the SMU, supports that presumption. Bourassa has not "demonstrated"—nor, apart from the conclusory allegations regarding Paragraph 44, has even argued—that there is "adversity of interest, collusion, or nonfeasance." *Id*. His interest in this case is identical to the interest of the representative Plaintiffs and the class as a whole, and "[t]here is no indication whatsoever that the representation rendered by [the current parties] would be inadequate." *Chiles*, 865 F.2d at 1215. Accordingly, he is not entitled to intervene under Rule 24(a).

**C. Permissive Intervention**

Rule 24(b) allows for permissive intervention, in the discretion of the Court, when a party "has a claim or defense that shares with the main action a common question of law or fact." "If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b)[,] and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Purcell*, 85 F.3d at 1513 (citation omitted).

As noted above, Bourassa's interests are adequately protected by the existing parties to the lawsuit, and his intervention would not further the development of factual or legal issues in the case. *See Benjamin v. Dep't of Pub. Welfare of Commonwealth.*, 267 F.R.D. 456, 465 (M.D. Pa. 2010), *aff'd*, 432 Fed. Appx. 94 (3d Cir. 2011)

("Assuming, *arguendo*, the . . . Intervenors share a claim or defense with the parties in the litigation, permissive intervention is nonetheless inappropriate because the Applicants' interests are already represented in the litigation, and their appearance as intervenors would not sufficiently add anything to the litigation."). Although Bourassa does challenge certain provisions of the Settlement Agreement, Doc. 227, the Court has fully considered those arguments as objections. Doc. 256 at 22-23. Bourassa's participation as a representative party would not add anything to the case beyond what his objections have added. His participation would also unnecessarily delay the litigation and would be unfair to the existing parties by allowing Bourassa, who is not even confined in the SMU, to become a representative party while they remain class members.[4] Further, the class is represented by competent counsel, and Bourassa's participation, to the extent he made any meaningful decisions concerning litigation strategy, would risk undermining the quality of representation for the class as a whole. *See Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973) (noting that Rule 23(a)(4)'s adequate-representation requirement is satisfied only if it "appear[s] that the representative will vigorously prosecute the interests of the class through qualified counsel"); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[W]e consider the competence of a layman representing himself to be clearly too limited to allow him

---

[4] Although the Court's consideration of the timeliness of Bourassa's motion, above, found that the existing parties would not be prejudiced by any *delay* in Bourassa's filing the motion to intervene, the prejudice inquiry for permissive intervention considers prejudice more broadly. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977) ("it is apparent that prejudice to the existing parties other than that caused by the would-be intervenor's failure to act promptly was not a factor meant to be considered where intervention was sought under section (a). Therefore, to take any prejudice that the existing parties may incur if intervention is allowed into account under the rubric of timeliness would be to rewrite Rule 24 by creating an additional prerequisite to intervention as of right. Moreover, since section (b) provides that prejudice to the original parties must be considered when permissive intervention is sought, to take that same type of prejudice into account in the determining of timeliness would be to consider the same factor twice").

to risk the rights of others . . . it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action").

As another court explained in denying a class member's motion to intervene,

> Here the interests of [the putative intervenor] are the same as that of the named parties, to obtain a settlement that is fair, reasonable, and adequate for the class. There are no divergent interests, only differing opinions on how the proffered settlements fit within that framework. [The intervenor's] presence through intervention would not accomplish any more than [his] participation as [an] objector[] and would create the possibility of further delay and final disposition of this action. The Court finds no reason justifying permissive intervention.

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993). Bourassa likewise would not add to the case and would prejudice the other parties and class members.

A treatise observed that permissive intervention "tends to be granted somewhere between the Scylla of the intervenor adding nothing to the case, meaning she is likely adequately represented and her presence will just slow things down, and the Charybdis of the intervenor adding too much to the case, meaning the applicant is not necessarily adequately represented but may unduly delay or prejudice the proceedings." 3 Newberg on Class Actions § 9:36 (5th ed.). Bourassa's motion is in the first category. He is not entitled to permissive intervention.[5]

---

[5] Furthermore, because Bourassa is an inmate, he is subject to the Prison Litigation Reform Act. The PLRA requires that prisoners bringing a lawsuit *in forma pauperis* each file their own complaint and each pay the full filing fee. *Hubbard v. Haley*, 262 F.3d 1194, 1197-98 (11th Cir. 2001). There are numerous examples of district courts, including this one, applying *Hubbard* to Rule 24 intervention. *See, e.g.*, Doc. 103 (adopting Report and Recommendation to deny Movant Daker's motion to intervene); *Smith v. Fla. Dep't of Corr.*, 2015 WL 500166, at *2 (S.D. Fla. Feb. 4, 2015); *Daker v. Wetherington*, 469 F. Supp. 2d 1231, 1235 (N.D. Ga. 2007); *Daker v. Ferrero*, 2007 WL 1100463, at *3 (N.D. Ga. Jan. 3, 2007); *Sterling v. Sellers*, 2017 WL 4693495, at *1 (M.D. Ga. Oct. 18, 2017) (adopting Report and Recommendation to deny Movant Daker's motion to intervene); *Gandy v. Gramiak*, 2017 WL 2616920, at *2 (S.D. Ga. June 16, 2017), *report and recommendation adopted*, 2017 WL 4909473 (S.D. Ga. Oct. 31, 2017) (denying Movant Daker's motion to intervene).

Courts have applied *Hubbard* to Rule 24 in part because not doing so would allow pro se inmates to bring claims without paying the filing fee simply by intervening after someone else files a similar complaint, thus circumventing the PLRA's filing fee requirement. *See, e.g.*, *Ferrero*, 2007 WL 1100463, at *3. That rationale may apply with less force to a present class member, whose rights will be

## III. CONCLUSION

For the reasons noted above, Bourassa's motion to intervene (Doc. 228) is **DENIED**.

**SO ORDERED**, this 10th day of May, 2019.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT

---

adjudicated regardless of whether he is allowed to intervene, than it does to the typical Rule 24 movant. Because Bourassa cannot satisfy the standard of Rule 24(a) or Rule 24(b), it is not necessary to determine whether the PLRA bars Bourassa's intervention.