## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

TIMOTHY GUMM, *et al.*, )
)
)
Plaintiffs, )
)
v. ) CIVIL ACTION NO. 5:15-cv-41 (MTT)
)
RICK JACOBS, *et al.*, )
)
)
Defendants. )
_____)

## ORDER

Jeffrey Bourassa moves to appeal in forma pauperis ("IFP") following the Court's denial of his motion to intervene. Docs. 273; 275. Applications to appeal IFP are governed by 28 U.S.C. § 1915 and Fed. R. App. P. 24. 28 U.S.C. § 1915 provides:

> (a)(1) [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.
> . . .
> (3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

Similarly, Fed. R. App. P. 24(a) provides:

> (1) [A] party to a district-court action who desires to appeal in forma pauperis must file a motion in the district court. The party must attach an affidavit that:
>
> > (A) shows . . . the party's inability to pay or to give security for fees and costs;
> > (B) claims an entitlement to redress; and
> > (C) states the issues that the party intends to present on appeal.

> (2) If the district court denies the motion, it must state its reasons in writing.

Thus, the Court must make two determinations when faced with an application to proceed IFP. First, it must determine whether the movant is financially able to pay the filing fee required for an appeal. Next, the Court must determine if the movant has satisfied the good faith requirement. "'[G]ood faith' . . . must be judged by an objective standard." *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The movant demonstrates good faith when he seeks review of a non-frivolous issue. *Id*. An issue "is frivolous if it is 'without arguable merit either in law or fact.'" *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (citations omitted). "Arguable means capable of being convincingly argued." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir. 1991) (quotation marks and citations omitted); *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) ("[A] case is frivolous . . . when it appears the plaintiff 'has little or no chance of success.'") (citations omitted). "In deciding whether an [in forma pauperis] appeal is frivolous, a district court determines whether there is 'a factual and legal basis . . . for the asserted wrong, however inartfully pleaded.'" *Sun*, 939 F.2d at 925 (citations omitted).

Bourassa alleges he has an income of $100 to $150 per month, no cash, and no expenses. Docs. 273 at 1-3; 273-1. He left some blanks incomplete on his IFP affidavit. Doc. 273 at 2. He has not yet submitted a prisoner account statement, but he has moved for the Court to consider his IFP application without an account statement. Doc. 274. Although these deficiencies prevent the Court from properly evaluating Bourassa's IFP application, it is clear that his appeal would be frivolous, so he is not entitled to proceed IFP.

The Court's review of the issues addressed by the Movant's supplemental motion (Doc. 275), his motion to intervene (Doc. 228), and the Court's Order denying that motion (Doc. 258) demonstrates that the Movant's appeal is frivolous. His supplemental motion makes several arguments. First, Bourassa takes issue with the Court's characterization of his interest as speculative and uncertain, claiming he will certainly return to Tier III. Doc. 275 at 30 ("when he returns to state custody—not if, when (no speculation)—he will again be on Tier III at GDCP"). However, both the Defendants and the Department of Justice take a different view. The Defendants' counsel has represented that if Bourassa returns to state custody, he will not automatically be placed in Tier III, but will instead be evaluated for classification in accordance with the Settlement Agreement. Doc. 252 at 14-15. Also, the prosecution in Bourassa's pending RICO case represented that "'[i]f convicted, the defendants [including Bourassa] will be removed to federal facilities all across the United States.'" Press Release, United States Department of Justice, 23 Ghostface Gangsters Federally Indicted on Racketeering Conspiracy and Other Charges (March 6, 2018), https://www.justice.gov/opa/pr/23-ghostface-gangsters-federally-indicted-racketeering-conspiracy-and-other-charges. Bourassa's interest in obtaining restrictions on long-term confinement which are different from those in the Settlement Agreement remains uncertain and speculative.

Second, Bourassa alleges that if he is returned to state custody, he may be eligible for placement in Tier III for more than two years, so the Court was wrong to conclude his interests are adequately represented by the existing Plaintiffs. Doc. 275 at

32. He makes that argument on the basis of Paragraph 44(5) and 44(6) of the Settlement Agreement.

Paragraph 44(5) permits confinement for more than two years if "(5) the inmate's crime was so egregious that the person was placed in the Tier III Program immediately upon being placed in GDC custody." Doc. 256-1 at 13-14. However, Bourassa nowhere alleges he was placed in Tier III upon being placed in GDC custody. Instead, he argues that the GDC's Commissioner participated in a press conference held to announce the unsealing of a federal RICO indictment and alleging Bourassa is a founding member of the Ghostface Gangsters, and that the press conference was an attempt by the GDC to manipulate publicity so that it could place Bourassa in Tier III. Doc. 275 at 32-33. Even if that claim were plausible, which it is not, Paragraph 44(5) would still be inapplicable to Bourassa.

Paragraph 44(6) applies to inmates who, because of their influence and authority over others, pose an exceptional safety risk. Doc. 256-1 at 13-14. Bourassa argues that "based on the above said press conference . . . the GDC clearly claimed that Movant qualifies for incarceration on Tier III for longer than two (2) years under Paragraph 44(6)." Doc. 275 at 33-34. But nowhere has the GDC claimed that. The only possible interest Bourassa could have in avoiding long-term confinement under Paragraph 44(6) would arise only if all of the following occur: (1) Bourassa is acquitted of the RICO charges and returns to state prison; (2) the GDC places him at GDCP Tier III; (3) the GDC still considers him a leader of the gang, acquittal notwithstanding; (4) the GDC considers him, on that basis, an exceptional threat to prison safety; (5) the GDC decides to retain him in the SMU for longer than two years; and (6) the duration of

that hypothetical SMU confinement exceeds two years within the time period when the Settlement Agreement, which expires May 7, 2022, is in effect.  *See* Docs. 256 at 29; 256-1 at 22.  Again, Bourassa's interest is contingent and speculative.

Further, as discussed more fully in the Court's Order denying Bourassa's motion, the representative Plaintiffs have a strong interest in limiting long-term confinement, and class counsel achieved an excellent outcome for the class on precisely that issue.  *See* Doc. 258 at 6-7.  Indeed, class counsel likely achieved the best possible outcome, as a hypothetical Settlement Agreement which prohibited the Defendants from placing suspected gang leaders in long-term confinement would raise serious security issues and potentially implicate the Prison Litigation Reform Act's provisions limiting relief, 18 U.S.C. § 3626.  In short, Bourassa does not have a stronger interest in limiting long-term confinement than the representative Plaintiffs, and class counsel has already adequately protected that interest in the Settlement Agreement.  Bourassa has alleged no grounds on which the Court could conclude his interests are not adequately represented.

For those reasons, the Movant has raised no issues with arguable merit, and the appeal is not brought in good faith.  Consequently, the Movant's application to appeal in forma pauperis (Docs. 273; 275) is **DENIED**.

If the Movant wishes to proceed with his appeal, he must pay the entire $505 appellate filing fee.  Because the Movant has stated that he cannot pay the fee immediately, he must pay using the partial payment plan described under 28 U.S.C. § 1915(b). Pursuant to section 1915(b), the prison account custodian where the Movant is confined shall cause to be remitted to the Clerk of this Court monthly payments of

20% of the preceding month's income credited to the Movant's account (to the extent the account balance exceeds $10) until the $505 appellate filing fee has been paid in full. Checks should be made payable to "Clerk, U.S. District Court." The Clerk of Court is **DIRECTED** to send a copy of this Order to the custodian of the prison in which the Movant is incarcerated.

**SO ORDERED**, this 12th day of July, 2019.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT