# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| TIMOTHY GUMM, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:15-cv-41 (MTT) |
| | ) |
| RICK JACOBS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Gordon Evans moves to intervene as of right or, in the alternative, permissively. For the following reasons, that motion (Doc. 264) is **DENIED**.

## I. BACKGROUND

Evans states that in August 2016, he was assigned to the Tier III Program in the Special Management Unit ("SMU") at the Georgia Diagnostic & Classification Prison ("GDCP"). Doc. 264 at 1. But he states that he is "out-to-court" and in the custody of the United States Marshal Service. *Id.* He notes that although he "is a class member in that he is currently assigned to GDCP/SMU/Tier III" and claims he will be returning there, he has not been provided notice of the Settlement Agreement. *Id.* Movant Evans therefore "objects to any proposed settlement agreement unless and until he is both served with proper notice" and a copy of the Settlement Agreement "and has an opportunity to be heard in response to said Settlement Agreement." *Id.*

The Court also notes that it certified a class of "all persons who are or in the future will be assigned to the facility currently known as the Special Management Unit at

Georgia Diagnostic & Classification Prison, or who are or in the future will be assigned to the Tier III Program." Doc. 256 at 28. Evans, who has been in federal custody but could conceivably return to the SMU, is a potential future class member. Depending on the outcome of his federal trial, he may or may not return to the Georgia Diagnostic & Classification Prison; if he does return, he may or may not be assigned to Tier III. *See* Doc. 252 at 14-15 (discussing assignment and evaluation procedure). Despite that attenuated and uncertain connection to the Tier III program, class counsel treated a similarly situated out-to-court inmate, Jeffrey Bourassa, as a class member. Doc. 252 at 6.

Bourassa and Cody Todd, another out-to-court inmate, previously filed motions to intervene; their briefs and Evans's are nearly identical, with only slight adjustments and redactions. The Court denied Bourassa's motion to intervene, Doc 258, and Bourassa's appeal of that denial is pending. *Bourassa v. Jacobs*, 19-11944. Because Evans raises the same arguments, the Court's analysis is essentially the same for him as for Bourassa and Todd, except that Evans's motion, unlike theirs, is untimely.

On May 7, 2019, the Court entered the parties' Settlement Agreement as a final injunction and entered judgment. Docs. 256; 257. That injunction will expire on May 7, 2022. It is unclear now what purpose Evans's intervention would serve or how it would impact the existing Settlement Agreement. In any event, as discussed below, Evans may not intervene as a matter of right because his interests are adequately represented by the existing representative plaintiffs, and permissive intervention is inappropriate because, to the extent Evans's intervention could affect the Settlement Agreement, it

would weaken the quality of the class members' representation and would risk undermining a settlement that is fair, adequate, and reasonable.

## II. DISCUSSION

Rule 24(a) of the Federal Rules of Civil Procedure allows, in certain situations, for intervention as of right, and Rule 24(b) allows for permissive intervention in the Court's discretion. Both Rule 24(a) and Rule 24(b) require that a motion to intervene be "timely," so the Court addresses timeliness first. *See NAACP v. New York*, 413 U.S. 345, 365 (1973).

### A. Timeliness

"A district court must consider four factors in assessing timeliness, namely (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983).

As to the first factor, Evans claims he first learned of this case on February 26, 2019 and "is promptly moving to intervene, less than a month later." Doc. 264 at 2. But his motion was filed two months later at the earliest: it is dated April 26, 2019. *Id.* at 7-8. And the envelope was postmarked May 14, 2019. Doc. 264-1.[1] During the two to two-

---

[1] That discrepancy may stem from the fact that Evans's motion is almost identical to Bourassa's. Both would-be intervenors claim they learned of the suit on February 26 and moved to intervene less than a

and-a-half months that Evans waited to file, the Court's approval of the parties' class action settlement was pending. Docs. 210; 256. Some inmates objected, including Evans, and the Court considered those objections. Docs. 233; 256 at 21-25; 264 at 1. If Evans wished to intervene, he should have filed his motion earlier. The first factor, therefore, supports a finding that the motion is not timely. As to the second factor, the delay resulted in the motion being received (and perhaps posted) after the Settlement Agreement was finalized. Evans's intervention would raise the possibility of renegotiating the Settlement Agreement and potentially forfeiting the class-wide benefits obtained by class counsel. Evans's delay, therefore, clearly prejudices the existing parties. As to the third factor, there is minimal prejudice to Evans if his motion is denied, because the concerns he raises were also raised by Bourassa during the objection period, and those concerns were fully considered by the Court. Docs. 227, 256 at 22-23. Also, as discussed in more detail below, the representative plaintiffs have an interest identical to Evans's, so he will not be prejudiced if his motion is denied. *See Jefferson Cty.*, 720 F.2d at 1517 (noting that courts will "find no prejudice sufficient to give weight to the third factor" when a putative intervenor has interests identical to those of a party). As to the fourth factor, there are no unusual circumstances concerning the timing of Evans's motion. Considering all the circumstances, Evans's motion is untimely. Accordingly, he is not entitled to intervene.

**B. Intervention as of Right**

However, even if Evans's motion were timely, intervention would not appropriate. Rule 24(a)(1) allows intervention when the putative intervenor is "given an unconditional

---

month later. Doc. 228 at 9. Bourassa's motion, unlike Evans's, was actually dated and mailed within a month after February 26, 2019. *See generally* Doc. 228.

right to intervene by a federal statute," but Evans has not pointed to any statute conferring an unconditional right to intervene in this case. Rule 24(a)(2) allows intervention as of right when the putative intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

To intervene as of right, therefore, a movant must satisfy four requirements: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). As discussed above, Evans's motion is untimely. Further, although his connection to Tier III is attenuated and uncertain, the Court will assume, for the purposes of resolving this motion, that he satisfies the second and third requirements.[2]

However, Evans cannot satisfy the fourth requirement for intervention as of right: demonstrating that his interest—that is, his speculation that he may return to Tier III—is inadequately represented by the existing parties. *See Purcell*, 85 F.3d at 1512. Generally, the intervenor will satisfy this requirement "unless it is clear that [the current parties] will provide adequate representation." *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). Although the movant's burden to demonstrate inadequacy is "not onerous," the movant still "must produce something more than speculation as to the

---

[2] That assumption is generous to a fault. Potential future class members include virtually any male, whether currently incarcerated or not, who could transgress in a way that could lead him to Tier III.

purported inadequacy." *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) (quotation marks omitted) (citing *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979); *Dimond v. Dist. of Columbia,* 792 F.2d 179, 192 (D.C.Cir.1986)).  On the other hand, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978).[3]

Evans argues that class representation is inadequate because class counsel are sacrificing his speculative interests to further the interests of other class members. Specifically, he objects to Paragraph 44 of the Settlement Agreement, which allows the Defendants to keep an inmate in Tier III for longer than two years if, among other conditions, "(5) the inmate's crime was so egregious that the person was placed in the Tier III Program immediately upon being placed in GDC custody; or (6) the inmate, due to his unique position of influence and authority over others, poses such an exceptional, credible, and articulable risk to the safe operation of the prison system or to the public that no facility other than the Tier III Program facility is sufficient to contain the risk." Docs. 256-1; 264 at 7.  Evans, however, does not provide any allegations indicating why those provisions would disadvantage him relative to the representative plaintiffs or the class as a whole.

In fact, Evans's allegations undermine his conclusory statement that his interests in limitations on long-term confinement are stronger than the interests of other class

---

[3] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

members. It does not appear that Evans was transferred to the SMU Tier III until August 2016, after he had already been incarcerated at Telfair State Prison, Hays State Prison, and Hancock State Prison. Doc. 264 at 1. Accordingly, category (5) of Paragraph 44 does not apply to him.

As to category (6), Evans gives no reason why he is any more likely than other inmates to be placed in that category. He makes no allegation he was considered especially dangerous to other inmates or to the public, or that he has influence or authority over others. Evans, therefore, has not indicated he is any more likely than the named Plaintiffs or any other member of the class to be burdened by Paragraph 44(6). It is additionally uncertain (1) whether he will be returning to GDC custody at all, (2) if so, whether he would be placed in Tier III, and (3) if he were placed in Tier III, whether he would be held there for more than 24 months. Further, the settlement expires on May 7, 2022. Docs. 256-1 at 26; 256 at 29. To even conceivably be prejudiced by Paragraph 44, Evans would not only have to satisfy the three conditions noted above, but also his return to GDC and assignment to the SMU would have to occur within the next 48 days: after that, the Settlement Agreement's term will be less than 24 months, so any new inmates assigned to the SMU will be unaffected by Paragraph 44. A review of the docket of his pending criminal case reveals that is extremely unlikely. *See United States v. Evans*, 1:16-cr-427 (N.D.Ga.). Accordingly, although the Court carefully considers his argument that his interests are inadequately represented, that argument fails.

Further, the representative Plaintiffs have adequate incentive to pursue a settlement which limits long-term confinement in the SMU. According to class counsel,

Plaintiff Gumm was in the SMU for seven years.  Doc. 252 at 7.  Plaintiff Watkins was assigned to the SMU on July 27, 2009 and remained there at least until the time the Settlement Agreement was entered.  Docs. 140 ¶¶ 47, 50.  And the representative Plaintiffs have, in fact, negotiated favorable settlement terms which limit long-term confinement.  Class counsel explained the process behind the negotiation of the Agreement's 24-month cap, with limited exceptions for security:

> In light of the law that we have, Plaintiffs' assessment is that we have done—we have made the best—after a period of considered judgment on this issue and a protracted back-and-forth negotiation, we arrived at a settlement Agreement that adds significant procedural protections to the process by which people are evaluated for how long they stay in the SMU.

Doc. 252 at 7-8.  The procedural protections provide inmates assigned to the SMU for longer than 24 months "quarterly review by a panel composed of the Director of Field Operations, the Statewide Mental Health Director, the Statewide Medical Director, and a member of the Office of Legal Services."  Doc. 256-1 ¶ 45.  That represents an excellent outcome for the class, and there is no indication that class counsel could have advocated more vigorously or achieved a better outcome regarding long-term confinement.[4]  The Court also believes that class counsel is better able to make litigation decisions and negotiate favorable relief for the class than Evans.[5]  *See* 3 Newberg on Class Actions, § 9:35 (5th ed.) ("Ordinarily . . . a mere difference in

---

[4] The Court further notes that an exceptionless 24-month cap would prevent the Defendants from confining certain inmates in the SMU no matter the security risk posed.  Such a provision would create serious problems in prison security and would potentially raise issues under 18 U.S.C. § 3626(a), which prohibits the Court from approving the relief provided by the Settlement Agreement unless the Court finds such relief "is the least intrusive means necessary to correct the violation of the Federal right" and requires the Court, in making that inquiry, to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. § 3626.  The compromise reflected in Paragraph 44 is likely the most favorable relief that the class could have obtained regarding limitations on long-term confinement in the SMU.

[5] For the same reason, Evans's conclusory argument that he might pursue a different litigation strategy from that of class counsel does not show inadequate representation.  *See* Doc. 264 at 6-7.

preferred litigation tactics or strategy will be insufficient to show inadequate representation") (citing *Jenkins by Jenkins v. State of Mo.*, 78 F.3d 1270, 1275 (8th Cir. 1996)). The Court additionally believes, based on its own independent review, that the Settlement Agreement is a fair, adequate, and reasonable outcome for the class members. *See* Docs. 210; 256.

In short, the representative Plaintiffs have the "same ultimate objective" as Evans regarding conditions of confinement in Tier III, and they have at least as strong an interest as he in limiting long-term confinement in Tier III. *Int'l Tank Terminals*, 579 F.2d at 967. Accordingly, "a presumption arises that [Evans's] interests are adequately represented." *Id.* The Settlement Agreement, which provides favorable relief for the class, including limitations on long-term confinement in the SMU, supports that presumption. Evans has not demonstrated—nor, apart from the conclusory allegations regarding Paragraph 44, even argued—that there is "adversity of interest, collusion, or nonfeasance." *Id.* Inasmuch as Evans has any interest at all in conditions in the SMU, that interest is identical to the interest of the representative Plaintiffs and the class as a whole, and "[t]here is no indication whatsoever that the representation rendered by [the current parties] would be inadequate." *Chiles*, 865 F.2d at 1215. Accordingly, he is not entitled to intervene under Rule 24(a).

**C. Permissive Intervention**

Rule 24(b) allows for permissive intervention, in the discretion of the Court, when a party "has a claim or defense that shares with the main action a common question of law or fact." "If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b)[,] and even though there is

a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Purcell*, 85 F.3d at 1513 (citation omitted).

As noted above, Evans's interests are adequately protected by the existing parties to the lawsuit, and his intervention would not further the development of factual or legal issues in the case. *See Benjamin v. Dep't of Pub. Welfare of Commonwealth.*, 267 F.R.D. 456, 465 (M.D. Pa. 2010), *aff'd*, 432 Fed. Appx. 94 (3d Cir. 2011) ("Assuming, *arguendo*, the . . . [i]ntervenors share a claim or defense with the parties in the litigation, permissive intervention is nonetheless inappropriate because the Applicants' interests are already represented in the litigation, and their appearance as intervenors would not sufficiently add anything to the litigation."). Although Evans does challenge certain provisions of the Settlement Agreement, the Court has fully considered those arguments as objections. Doc. 256 at 22-23 (addressing the same arguments as advanced in objections by Waseem Daker and Bourassa). Evans's participation as a representative party would not add anything to the case.

His participation would also risk upsetting the substantial relief afforded by the Settlement Agreement and would be unfair to the existing parties by allowing Evans, who is not even confined in the SMU, to become a representative party while they remain class members. Further, the class is represented by competent counsel, and Evans's participation, to the extent he made any meaningful decisions concerning litigation strategy, would risk undermining the quality of representation for the class as a whole. *See Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973) (noting that Rule 23(a)(4)'s adequate-representation requirement is satisfied only if it "appear[s] that the

representative will vigorously prosecute the interests of the class through qualified counsel"); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[W]e consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others . . . it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action").

As another court explained in denying a class member's motion to intervene,

> Here the interests of [the putative intervenor] are the same as that of the named parties, to obtain a settlement that is fair, reasonable, and adequate for the class. There are no divergent interests, only differing opinions on how the proffered settlements fit within that framework. [The intervenor's] presence through intervention would not accomplish any more than [his] participation as [an] objector[] and would create the possibility of further delay . . . of this action. The Court finds no reason justifying permissive intervention.

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993). Evans likewise would not add to the case and would prejudice the other parties and class members.

A treatise observed that permissive intervention "tends to be granted somewhere between the Scylla of the intervenor adding nothing to the case, meaning she is likely adequately represented and her presence will just slow things down, and the Charybdis of the intervenor adding too much to the case, meaning the applicant is not necessarily adequately represented but may unduly delay or prejudice the proceedings." 3 Newberg on Class Actions § 9:36 (5th ed.). Evans's motion is in the first category. He is not entitled to permissive intervention.[6]

---

[6] Furthermore, because Evans is an inmate, he is subject to the Prison Litigation Reform Act. The PLRA requires that prisoners bringing a lawsuit *in forma pauperis* each file their own complaint and each pay the full filing fee. *Hubbard v. Haley*, 262 F.3d 1194, 1197-98 (11th Cir. 2001). There are numerous examples of district courts, including this one, applying *Hubbard* to Rule 24 intervention. *See, e.g.*, Doc. 103 (adopting Report and Recommendation to deny Movant Daker's motion to intervene); *Smith v. Fla.*

## III. CONCLUSION

For the reasons noted above, Evans's motion to intervene (Doc. 264) is **DENIED**.

**SO ORDERED**, this 20th day of March, 2020.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT

---

*Dep't of Corr.*, 2015 WL 500166, at *2 (S.D. Fla. Feb. 4, 2015); *Daker v. Wetherington*, 469 F. Supp. 2d 1231, 1235 (N.D. Ga. 2007); *Daker v. Ferrero*, 2007 WL 1100463, at *3 (N.D. Ga. Jan. 3, 2007); *Sterling v. Sellers*, 2017 WL 4693495, at *1 (M.D. Ga. Oct. 18, 2017) (adopting Report and Recommendation to deny Movant Daker's motion to intervene); *Gandy v. Gramiak*, 2017 WL 2616920, at *2 (S.D. Ga. June 16, 2017), *report and recommendation adopted*, 2017 WL 4909473 (S.D. Ga. Oct. 31, 2017) (denying Movant Daker's motion to intervene).

Courts have applied *Hubbard* to Rule 24 in part because not doing so would allow pro se inmates to bring claims without paying the filing fee simply by intervening after someone else files a similar complaint, thus circumventing the PLRA's filing fee requirement. *See, e.g.*, *Ferrero*, 2007 WL 1100463, at *3. That rationale may apply with less force to a present class member, whose rights will be adjudicated regardless of whether he is allowed to intervene, than it does to the typical Rule 24 movant. Because Evans cannot satisfy the standard of Rule 24(a) or Rule 24(b), it is not necessary to determine whether the PLRA bars Evans's intervention.