IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **RICARDO DAUGHTRY,** *et al.,* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:15-cv-41 (MTT) |
| | ) |
| **SHAWN EMMONS,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

## MONITORING ORDER

This matter comes before the Court on the Defendants' Motion for Entry of a Monitoring Order (Doc. 567) in accordance with this Court's Revised Contempt Order (Doc. 485 at 100), and this Court's Order made in open court on August 9, 2024, directing the Parties to submit a proposed order regarding monitoring (Doc. 552).  For good cause shown, the Defendants' motion (Doc. 567) is **GRANTED in part**, subject to the revisions made by the Court below.  Accordingly, it is **ORDERED** that independent monitoring in this case shall proceed as follows:

    1.     The Court hereby appoints Gary Mohr as Independent Monitor in this matter, subject to the terms and conditions contained in this Order.

    2.     The Monitor shall be bound to the orders of this Court and shall not employ, retain, or involve any other person or entity in monitoring activities without the written consent of all Parties or a written order of this Court.

    3.     The Monitor is authorized to review and receive documents covered under the Parties' Protective Order (Doc. 270) and shall be subject to the same access rights and confidentiality limitations as the Parties.

4. The Monitor shall be bound to the express terms of the Settlement Agreement, Addendum Agreement, and Injunction (collectively, the "Consent Decree") (Doc. 256, 364, 485). Nothing contained in this Order shall be construed to expand or diminish the rights of the Parties under the Consent Decree.

5. Monitoring of the Consent Decree shall commence on October 8, 2024, the first day of the Monitor's first site visit to the Special Management Unit ("SMU") and, consistent with this Court's prior Order (Doc. 485 at 100), shall conclude six months thereafter, except that, consistent with the Court's prior Order, any Party may move for an extension of the term for good cause shown. (Id.).

6. The Monitor shall be an agent of, and subject to the supervision and orders of, this Court. The records maintained by the Monitor shall not be deemed public records subject to public inspection.

## Monitoring Site Visits

7. The Monitor shall be entitled to conduct three Reporting site visits during the term of this Order, at the conclusion of which the Monitor will conduct a verbal exit briefing and issue a Monitoring Report as described further herein. The Monitor shall also be entitled to conduct three Non-Reporting site visits during the term of this Order, at the conclusion of which the Monitor will only conduct a verbal exit briefing as described further herein. No single site visit (either Reporting or Non-Reporting) shall last more than three days or twenty-four total hours in terms of the Monitor's presence at or in the SMU absent leave of Court. The Court may allow additional visits if necessary.

8. The Monitor's first site visit shall be a Non-Reporting site visit, after which time the Monitor's site visits shall alternate between Reporting and Non-Reporting (i.e., the second site visit will be a Reporting site visit, and the third site visit will be a Non-Reporting

2

site visit).

9. Unless the Court orders otherwise, when the Monitor conducts any interview with any Party, incarcerated person, or any employee or agent of any Party, counsel for Plaintiffs and Defendants may each designate one representative to attend and silently observe the interview.[1]

10. The Georgia Department of Corrections ("GDC") shall retain the authority and discretion to determine the security measures necessary to ensure the safety and security of incarcerated persons, GDC and contractor staff, counsel, and the Monitor. The Monitor may engage in *ex parte* communications with counsel for the Parties, but such communications shall not be "confidential" and may be ascertained by the Court upon request.

11. The Defendants shall develop a process by which incarcerated persons and staff may request an interview with the Monitor prior to any site visit (Reporting or Non-Reporting) by the Monitor. Such interviews shall be limited to matters concerning the Defendants' compliance with the Consent Decree, and nothing herein shall authorize any request for an interview with the Monitor regarding matters not directly relevant to the Defendants' compliance with the Consent Decree. Individuals who wish to request an interview with the Monitor must submit an interview request at least seven days prior to the first day of the Monitor's site visit. Counsel for the Defendants shall then submit the list of incarcerated persons and staff who requested, if any, to the Monitor and counsel for Plaintiffs. The Monitor shall determine whether a requested interview is necessary.

---

[1] The Defendants "unreservedly recognize[] that 'common and accepted' monitoring practice prohibits the presence of attorneys during inmate and staff interviews with monitors." Doc. 567 at 21. Nevertheless, the Defendants ask that counsel be allowed to attend interviews. Should the presence of counsel interfere with the Monitor's duties, the Court will revisit the issue.

**Documents**

12.     The Monitor shall be entitled to the same documents that the Defendants produces monthly to the Court in its Compliance Status Reports and may request additional non-privileged documents.[2]

13.     The Defendants shall provide the Monitor with the documents reasonably identified by him in advance of each site visit (e.g., Doc. 576-1 at 1-4).

14.     The Defendants will make documents from the calendar month immediately preceding the Monitor's site visits available during the Monitor's site visit, at the Monitor's request. For Class Members' classification reviews, mental health evaluations, and Offender Management Plans, the Defendants will provide the Monitor with access to a random sample of those documents on each site visit from the calendar month immediately preceding the site visit.  A "random sample" will consist of no more than thirty Class Members identified by the Monitor, unless for a particular category of documents a concern arises as to the adequacy of the sample size.  The Monitor shall provide the names of the Class Members in the random sample at least seven days before the first day of the Monitor's site visit.

15.     Any information or documents provided to the Monitor by either Party shall be provided to counsel for all Parties.

16.     The Parties agree that the Court's Protective Order applies to all information and documents the Parties provide to the Monitor, and the Parties may designate documents as confidential consistent with the terms of the Court's Protective Order (Doc. 270).  The Monitor shall comply with the terms and conditions of the Court's

---

[2] "Class Member" shall have the same meaning as provided for under the Settlement Agreement. (Doc. 485-1 ¶ 6).

Protective Order (Doc. 270). The Monitor may receive and review documents covered by the Court's Protective Order (Doc. 270).

17. The Defendants shall provide the Monitor with reasonable access to the information and documentation identified during discussions with the Monitor and Plaintiffs and/or as ordered by the Court; except, however, that absent Court approval the Monitor shall not receive or review any documents from, relating to, or regarding any offenders housed at any GDC facility other than the SMU.

18. Nothing in this Order shall limit the Monitor's access to any other non-privileged documents necessary for monitoring compliance with the Consent Decree so long as the defendants receive adequate time to produce such documentation and/or the production of such documents are not unnecessary, duplicative, or unduly burdensome.

## Monitoring Plan

19. The Monitor shall confer with the Parties and develop a "Monitoring Plan."

20. The Monitor shall provide the Parties with a proposed schedule in advance of each site visit.

## Monitoring Reports

21. The Monitor shall issue three written Monitoring Reports during the term of this Order. The Monitor shall issue his Monitoring Reports after the conclusion of each Reporting site visit. At the conclusion of each site visit (both Reporting and Non-Reporting), the Monitor shall give a verbal debriefing to counsel for the Parties and administrative staff at the SMU, including the SMU Warden and Deputy Wardens, and any other SMU staff the Monitor determines should attend the debriefing.

22. Each written Monitoring Report shall be provided to the Court and Parties within ten days following the last day of each of the Monitor's Reporting site visits. The

Monitor shall draft each Monitoring Report with all due consideration to minimize personally identifiable information of staff members and incarcerated persons. If any Party believes a Monitoring Report includes confidential or protected information that Party shall, within three days of receipt of the report, provide the Court with a redacted version of the Monitoring Report. The Court will determine whether the redactions are necessary and will enter the Monitoring Report on the docket.

23.     The Parties may submit written responses to the written Monitoring Reports within seven days after receipt of the Monitoring Report.

24.     The quarterly status report required under paragraph 11 of the Addendum Agreement (Doc. 485-2) has been suspended (Docs. 535 at 42:20-43:7; 552 at 39). Nothing in this Order is otherwise intended to modify or relieve the Defendants of their obligations under paragraphs 57 through 60 of the Settlement Agreement (Doc. 485-1) or under paragraphs 11 through 14 of the Addendum Agreement. (Doc. 485-2).

## Monitoring-Related Matters

25.     Defendants shall bear all reasonable fees, costs, and expenses of the Monitor and approved staff he hires. Such fees, costs, and expenses shall be sufficient to allow the Monitor to fulfill his duties, including pre-appointment fees and expenses, pursuant to this Monitoring Order in a reasonable and efficient manner.

26.     The Monitor will be compensated at a rate not to exceed $300 per hour. Any changes in the hourly rate charged by the Monitor shall be approved by the Court. The Monitor shall submit invoices for all hours expended and expenses incurred during each given month upon the initiation of monitoring activities. The Monitor shall reasonably describe time devoted to this matter in 0.1 increments and each time entry shall bear a corresponding entry reflecting the activities undertaken by the Monitor. Invoices shall

include reasonable expenses incurred by the Monitor in fulfilling his/her duties in this matter. The Defendants shall arrange for payment of the Monitor consistent with the Defendants' regular payment processes and practices. Any travel expenses shall be capped at the *per diem* rates established by the Defendants of Georgia. In the event of any dispute pertaining to the invoices submitted by the Monitor, such disputes shall be submitted to the Court for resolution.

27. If at any time during pendency of the Court's Order regarding monitoring, the Monitor notifies the Parties and the Court of his/her inability or unwillingness to continue to serve the Court and Parties as Monitor in this matter, the Parties will endeavor in a good-faith effort to promptly agree on a replacement. In the event the Parties cannot agree on a replacement, the Parties may each nominate up to three (3) candidates to the Court for appointment as the replacement Monitor in this action.

28. The Monitor shall not propose the termination of, or any other adverse employment action against, any employee of the Defendants or its contractors, including employees of GDC and its contractors.

29. The Monitor shall have no rights, entitlements, or obligations beyond the express terms of this Order, unless otherwise agreed in writing by the Parties or ordered by the Court.

30. The Monitor shall not disclose any information regarding the Monitor's duties; the Consent Decree; the SMU; class members; personnel of the Defendants, including individuals employed by GDC; or any other information relating to this case to any third party, including but not limited to any member of the press or the media or to any press or media outlet in any form or operating in any medium.

31. As the Court's agent, the Monitor shall not be subject to the subpoena

power of any court to the extent any subpoena seeks information from the Monitor relating to the Monitor's duties. Outside this matter, the Monitor shall not testify, render a report, or act as a consultant against the GDC or its agents, contractors, employees, in any capacity, arising from, concerning, or relating to the issues raised in this matter by the Parties or this Court; the Consent Decree; any monitoring activities; any documents and information received as Monitor; any conclusions, experiences, observations, or opinions associated with the Monitor's work in this matter.

**SO ORDERED**, this 7th day of October, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
